270 N.J. Super. 658 (1994)
637 A.2d 960
WARNER COMPANY, PLAINTIFF-RESPONDENT,
v.
BARBARA SUTTON, AS SECRETARY TO THE MAURICE RIVER TOWNSHIP PLANNING BOARD; MAURICE RIVER TOWNSHIP PLANNING BOARD; MAURICE RIVER TOWNSHIP AND MAURICE RIVER TOWNSHIP COMMITTEE, DEFENDANTS-RESPONDENTS, AND NEW JERSEY CONSERVATION FOUNDATION; NEW JERSEY AUDUBON SOCIETY; AND CITIZENS UNITED TO PROTECT THE MAURICE RIVER AND ITS TRIBUTARIES; MOVANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1994.
Decided February 24, 1994.
*659 Before Judges HAVEY, A.M. STEIN and A.A. RODRIGUEZ.
Edward Lloyd argued the cause for appellants (Rutgers Environmental Law Clinic and Schneck, Price, Smith & King, attorneys; Mr. Lloyd and Margaret M. Hayden on the joint brief with James P. Wyse).
John B. Kearney argued the cause for respondent Warner Company (Kearney & Brady, P.C., attorneys; Mr. Kearney on the brief).
Richard H. Daniels, attorney for respondent Maurice River Township and Maurice River Township Committee, joins in the brief submitted on behalf of respondent Warner Company (Mr. Daniels on the letter in lieu of brief).
Seeley & Jones, P.A., attorneys for respondent Maurice River Township Planning Board join in the brief submitted on behalf of respondent Warner Company (James J. Seely, on the letter in lieu of brief).
The opinion of the court was delivered by HAVEY, J.A.D.
In this zoning case, movants environmental groups sought post-judgment intervention for the purpose of appealing an amended consent order which memorialized a settlement between plaintiff Warner Company and defendants Maurice River Township Committee and Planning Board. The Law Division judge denied the *660 motion, concluding that the application was untimely. We reverse. Because intervention was sought solely for the purpose of challenging the legality of the settlement and amended consent order on appeal, the motion should have been granted.
Warner and its subsidiary, New Jersey Silica Sand Company, own approximately 3,000 acres of land adjoining the Manumuskin Watershed in Maurice River Township. For many years Warner has engaged in the mining of sand on the site. In 1982, the property was zoned M-3, General Industrial. Mining was not a permitted use in the M-3 zone. Nevertheless, Warner continued its mining activity as a legal nonconforming use.
On October 20, 1988, the Township rezoned a portion of the M-3 district adjacent to the Manumuskin Watershed, including Warner's tract, to C-25, Conservation Zone. The C-25 district permits various uses, including residential development at one unit per twenty-five acres. Mining is neither a conditional nor permitted use.
In 1988, Warner applied to the Planning Board for a renewal of its license to continue its mining activity. The application was in part granted and in part tabled. On October 31, 1988, Warner filed an action in lieu of prerogative writs against the Township and Planning Board, alleging that the rezoning of its property from M-3 to C-25 constituted "spot zoning" and was an unlawful "taking" without just compensation. It also sought approval of its mining license, alleging that the Planning Board had not acted upon its application within ninety-five days.
Movants are nonprofit corporations having the declared purpose of protecting open spaces and the environment (such as the Manumuskin Watershed) and the preservation of wildlife. Many members of the movant groups reside in Maurice River Township. Some live adjacent to the Warner site. It is not disputed that representatives of the movant groups had knowledge of the pendency of the Warner-Township litigation.
*661 After extensive discovery and negotiations, Warner and the Township defendants reached a tentative settlement which was memorialized in a June 24, 1991 consent order. Under the proposed agreement, the Township recognized Warner's nonconforming use status, and that it applied essentially to Warner's entire tract. Warner abandoned its challenge to the C-25 rezoning, and in turn was given a conditional right to construct a planned residential village on the tract.
There was spirited debate concerning the terms of the consent order. Defendant Planning Board objected to many of its terms. There is some evidence that several members of the movant groups participated in the debate during public hearings. The objections to the order made by the Planning Board were still not resolved by August 1, 1991. A revised settlement was thereafter reached between Warner and the Township defendants. An amended consent order was entered on August 22, 1991 memorializing the revised terms. At no time prior to the entry of the amended consent order did movants seek intervention.
The amended consent order, a thirty-six page document, provides Warner with a perpetual nonconforming-use status permitting the mining activity on its site. No conditional use permit "or other municipal approval" will be required by Warner or "its successors" under existing or "successor" ordinances as a condition to the mining activity. The order also provides that the abandonment of Warner's nonconforming use status "shall not be presumed ... unless Warner agrees in writing with the Township that the use has been abandoned...." Further, although the order does not expressly rezone the C-25 district, it provides that the Township's Zoning Map will note that Warner's tract "may be subject to Court Order" on file with the Planning Department. The order also grants Warner the right to develop an industrial complex on 250 acres, and a residential housing complex at a density which, according to movants, is greater than the C-25 density of one unit per twenty-five acres.
*662 On October 7, 1991, movants filed a notice of appeal from the August 22, 1991 amended consent order. When Warner moved to dismiss the appeal, movants cross-moved seeking intervention in the Appellate Division. We remanded to the Law Division for consideration of movants' application to intervene, as well as their motion to "reopen" the amended consent order.
The Law Division judge denied the motions, finding they were not "timely" because movants had notice of the settlement discussions as early as July 10, 1991, and did not seek intervention despite their knowledge that the Township "was not representing their interests." The judge also observed that movants' motive in seeking to intervene was not simply to appeal the amended consent order, but "to start afresh, i.e., to litigate issues either raised or which they would raise in the pending litigation." He concluded that this "pronounced purpose to litigate such issues ... must be ... the primary reason for denial of the intervention."
Intervention as of right under Rule 4:33-1, requires the movant to:
(1) claim "an interest relating to the property or transaction which is the subject of the action," (2) show he is "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest," (3) demonstrate that the "applicant's interest" is not "adequately represented by existing parties," and (4) make a "timely" application to intervene.
[Chesterbrooke Limited Partnership v. Planning Board of Tp. of Chester, 237 N.J. Super. 118, 124, 567 A.2d 221 (App.Div.), certif. denied, 118 N.J. 234, 570 A.2d 984 (1989) (quoting Vicendese v. J-Fad, Inc., 160 N.J. Super. 373, 378-79, 389 A.2d 1021 (Ch.Div. 1978)).]
In the post-judgment setting, motions for intervention have received mixed treatment by our courts. Generally, intervention after judgment is allowed if necessary "to preserve some right which cannot otherwise be protected." Chesterbrooke, 237 N.J. Super. at 123, 567 A.2d 221; Township of Hanover v. Town of Morristown, 118 N.J. Super. 136, 142, 286 A.2d 728 (Ch.Div.), aff'd o.b., 121 N.J. Super. 536, 298 A.2d 89 (App.Div. 1972), certif. denied, 62 N.J. 427, 302 A.2d 131 (1973). However, in Hanover, the *663 Chancery Division denied an intervention motion made fourteen months after judgment, reasoning:
An essential prerequisite to intervention is timeliness, which should be equated with diligence and promptness. One who is interested in pending litigation should not be permitted to stand on the sidelines, watch the proceedings and express his disagreement only when the results of the battle are in and he is dissatisfied.

[118 N.J. Super. at 143, 286 A.2d 728.]
In contrast, we held in Chesterbrooke that objectors in a zoning case could intervene as of right for purposes of appealing a judgment which had granted an applicant automatic approval under N.J.S.A. 40:55D-61 of "flexible c(2) variances." See N.J.S.A. 40:55D-70c(2). We reasoned that when the defendant Planning Board decided not to appeal the final judgment, it no longer "adequately represented" objectors' interests; it left them so situated that "disposition of the action" would impair their ability to protect their interests. 237 N.J. Super. at 124-25, 567 A.2d 221. Since there was no one available to advance the objectors' positions through an appeal, intervention was mandated. Id. at 125, 567 A.2d 221. Also, we disagreed with the Law Division's finding that the objectors' motion was "simply too late," concluding that:
the judge did not consider the purpose of the intervention motion in relation to the stage in the action when the motion was made. See Clarke v. Brown, 101 N.J. Super. 404, 410-411 [244 A.2d 514] (Law Div. 1968). See also, United States v. American Tel. and Tel. Co., 642 F.2d 1285, 1294 (D.C. Cir.1980). On the issue of timeliness, the court must consider the purpose for which intervention is sought. For example, if intervention is sought only for the limited purpose of taking an appeal, the only "prejudice to those already parties in the case" from granting intervention is the inherent "delay" necessarily involved in opposing the intervenor's appeal. 642 F.2d at 1294-1295. When an intervenor seeks intervention "after the final judgment" and only "for the purpose of appealing," the critical inquiry is simply "whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." United Airlines, Inc. v. McDonald, 432 U.S. 385, 387, 395-396, 97 S.Ct. 2464, [2466, 2470-2471] 53 L.Ed.2d 423, 427, 433 (1977).

[Ibid.]
We are entirely satisfied that movants' intervention application should have been granted. The central issue is whether *664 the application was "timely."[1] As stated, the "primary reason" the Law Division judge gave for finding the motion untimely was that movants intended "to start afresh" after having failed to intervene during the four years the Warner-Township litigation was pending. It is true that during the motion hearing movants expressed such an intention. However, now movants unequivocally state in their appellate brief that they "seek merely to contest the flagrant illegalities of the [amended consent order], not to relitigate the entire case." Consequently, we are not faced with a time- and cost-consuming relitigation of issues in the underlying litigation, occasioned by an intervenor's nonaction during those proceedings. See Hanover, 118 N.J. Super. at 147-49, 286 A.2d 728.
The judge was also influenced by the fact that during the settlement discussions movants knew the Township no longer represented their interests and nevertheless failed to seek intervention. Warner adds that movants in fact "participated" in the settlement discussions during public meetings prior to entry of the amended complaint.
First, the movants' "participation" in the negotiations is not so clear. We find nothing in the record suggesting that settlement of the Warner litigation was ever discussed by the Township Committee *665 or Planning Board at a public meeting where the general public participated in settlement discussions before the original June 24, 1991 consent order was entered.[2] Also, upon entry of that order, the Planning Board immediately notified the Township Committee of its "total disagreement" with its terms. Even some members of the Township Committee expressed their dissatisfaction.
The matter was thereafter discussed by the Township Committee at several executive sessions, without public input, and was ultimately discussed at a public meeting on August 1, 1991. However, during this meeting various options were still being considered including: "don't grant the [mining] license and renegotiate with Warner." As of this date, movants may well have reasonably believed that resistance to the settlement by some Township Committee and Planning Board members was sufficient to protect their interests. Chesterbrooke, 237 N.J. Super. at 124, 567 A.2d 221.
It was not until August 22, 1991, after the amended consent order was entered, that movants' general membership and the public were privy to the specific terms the Township and Planning Board ultimately agreed to with Warner. It was only then that the interests of the movants and the Township defendants truly diverged: the Township sought to maintain the terms of the order as a basis for settling Warner's demand for money damages and other relief; movants sought to invalidate the order because they claimed it undermined the integrity and demanding environmental standards of the C-25 zone. See In re Acushnet River, 712 F. Supp. 1019, 1023-24 (D.Mass. 1989) (motion by National Wildlife Federation to intervene challenging settlement three and one-half *666 years after filing of complaint was timely because, only upon review of settlement did intervenor determine settlement was a "betrayal" of its interests). In any event, as we read Chesterbrooke, an objector's knowledge of the underlying litigation, or his participation in public hearings as an interested party should not be dispositive when, as here, post-judgment intervention is sought solely to appeal the judgment.
Moreover, "timeliness" must be measured based on the issues raised as a consequence of the amended consent order. The order raises a host of new issues which did not exist prior to its entry.
For example, movants seek to challenge the amended consent order to the extent that it may be deemed a "rezoning" of the C-25 district. They point to the fact that the order gives Warner a perpetual right to mine its property as a nonconforming use; to construct an industrial complex (a nonpermitted use); and to build a residential housing development at a density in excess of that permitted by the C-25 zone. Movants claim that such a "rezoning" violates the procedural and substantive safeguards under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129. See Suski v. Mayor & Comm'rs of Boro. of Beach Haven, 132 N.J. Super. 158, 164, 333 A.2d 25 (App.Div. 1975) (property owner and governing body cannot "amend" zoning ordinance by agreement, even if the agreement is memorialized by consent order); Whispering Woods at Bamm Hollow, Inc. v. Middletown Tp. Plng. Board, 220 N.J. Super. 161, 172, 531 A.2d 770 (Law Div. 1987) (settlement between planning board and applicant "must necessarily ... be conditioned upon a public hearing on the agreed plan"); see also V.F. Zahodiakin Eng'g Corp. v. Zoning Board of City of Summit, 8 N.J. 386, 395, 86 A.2d 127 (1952); Midtown Properties, Inc. v. Township of Madison, 68 N.J. Super. 197, 206, 172 A.2d 40 (Law Div. 1961), aff'd o.b., 78 N.J. Super. 471, 189 A.2d 226 (App. Div. 1963); Edelstein v. Asbury Park, 51 N.J. Super. 368, 389, 143 A.2d 860 (App.Div. 1958).
Corollary issues are likewise raised for the first time: (1) whether the public hearings conducted prior to entry of the *667 amended consent order satisfied the notice and hearing requirements of the MLUL; (2) whether the terms of the amended consent order may be affirmed but modified to afford a subsequent public hearing, see R.S. Cohen, D.K. Wolfson and K.M. DalCortivo, Settling Land Use Litigation While Protecting the Public Interest: Whose Lawsuit is This Anyway? 23 Seton Hall L.Rev. 844, 863 (1993); and (3) should the amended consent order be subject to a "[f]airness hearing[], at which a judge assesses a proposed settlement's fairness and reasonableness." Id. at 864.
We need not address the issues here, other than to acknowledge their existence and the fact that they, as well as other issues concerning the validity of the order, ripened only after its entry, and are precisely the questions movants seek to raise on appeal. Intervention solely for the purpose of appeal, in order to pursue these issues, is necessary to preserve movants' rights as interested parties.
It may be argued that denial of intervention would not "impair or impede" movants' ability to challenge the amended consent order, Chesterbrooke, 237 N.J. Super. at 124, 567 A.2d 221, since they may file a separate action in lieu of prerogative writs in the Law Division seeking precisely the same relief. Indeed, movants have filed such a complaint, which has been held in abeyance pending resolution of this appeal.
There is authority supporting the view that when a public body settles a zoning case with an applicant, interested parties may challenge the settlement by way of a separate action. See Whispering Woods, 220 N.J. Super. at 172-73, 531 A.2d 770. However, there is also authority for the proposition that an opponent would be estopped from instituting such an action, absent a timely motion to intervene in the underlying case. Monroe Realty Corp. v. Middletown Properties, Inc., 182 N.J. Super. 659, 662, 442 A.2d 1095 (Law Div. 1981). But see R.S. Cohen, D.K. Wolfson and K.M. DalCortivo, 23 Seton Hall L.Rev. at 860-61 (questioning viability of Monroe Realty).
*668 We do not decide the issue. Whether or not a prerogative writs action is available to movants, prosecution of such a case would be circuitous and would unnecessarily expend judicial and financial resources. All parties acknowledge that the issues to be raised by movants' appeal are purely legal in nature. As such, they may be briefed and promptly addressed in this forum.[3]
Finally, the Law Division judge was also of the view that intervention would frustrate the rule which encourages settlement. We acknowledge the judicial policy favoring the settlement of litigation. Chattin v. Cape May Greene, Inc., 216 N.J. Super. 618, 626, 524 A.2d 841 (App.Div.), certif. denied, 107 N.J. 148, 526 A.2d 209 (1987); Jannarone v. W.T. Co., 65 N.J. Super. 472, 476, 168 A.2d 72 (App.Div.), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961); R.S. Cohen, D.K. Wolfson and K.M. DalCortivo, 23 Seton Hall L.Rev. at 844. However, the issue here is not whether the parties to litigation have agreed to the essential terms of a settlement. See Lahue v. Pio Costa, 263 N.J. Super. 575, 596, 623 A.2d 775 (App.Div.), certif. denied, 134 N.J. 477, 634 A.2d 524 (1993). Rather, it is whether the Warner-Township settlement is enforceable as a matter of law. Judicial policy favoring settlement should not foreclose movants from raising the issue on appeal.
Since the sole purpose for intervention is to appeal the amended consent order, the question is whether movants acted promptly after entry of that order. Chesterbrooke, 237 N.J. Super. at 125-26, 567 A.2d 221. Clearly, they did: they filed a timely notice of appeal. When movants realized that their direct appeal was improvident, they promptly moved before us to intervene. Post-judgment intervention for the sole purpose of appeal has been found to be timely when made within the applicable time for filing an appeal. See United Airlines v. McDonald, 432 U.S. 385, 395, 97 S.Ct. 2464, 2470, 53 L.Ed.2d 423, 433 n. 16 (1977).
*669 We reverse and order intervention by movants. The Clerk of the Appellate Division shall enter an appropriate scheduling order for the filing of briefs and oral argument.
NOTES
[1] Clearly, movants claim "an interest relating to the property or transaction which is the subject of the action." Chesterbrooke, 237 N.J. Super. at 124 [567 A.2d 221]. Had they filed a direct action challenging the amended consent order, movants would no doubt have had standing. As stated, members of some of the movant groups live and own property adjacent to the site in dispute; others own property near the Manumuskin Watershed. See id. at 124, 567 A.2d 221; Cronin v. Township Comm. of Chesterfield Tp., 239 N.J. Super. 611, 617, 571 A.2d 1354 (App.Div. 1990); N.J.S.A. 40:55D-4 (definition of "interested party"). Also, as public interest groups dedicated to the protection of the environment and wildlife, movants would have standing to prosecute their action challenging the validity of the amended consent order. See Sierra Club v. Morton, 405 U.S. 727, 734, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636, 642 (1972); Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 337, 456 A.2d 390 (1983); W.M. Cox, New Jersey Zoning and Land Use Administration, § 33-1.1 at 462-64 (1993), and cases cited therein.
[2] Warner claims that some members of the movant groups were members of the Planning Board and Township Committee. However, movants acknowledge that only one of their members, a Mr. Fauerbach, was a Planning Board member. In any event, the members who were public officials were not in a position to share the confidential discussions during caucus meetings concerning the settlement with other movant-group members. See N.J.S.A. 10:4-12b.
[3] Movants represent to us that they intend to dismiss the prerogative writs action if allowed to intervene here.