722 A.2d 938 (1998)
317 N.J. Super. 563
James P. MEEHAN, Plaintiff,
v.
K.D. PARTNERS, L.P., and Planning Board of the Borough of Longport, Defendants-Respondents.
Thaddeus J. Bartkowski, Intervenor-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1998.
Decided December 18, 1998.
*939 Thaddeus J. Bartkowski, intervenor-appellant, argued the cause pro se.
Stephen Hankin, Atlantic City, for defendant-respondent K.D. Partners, L.P. (Hankin, Sandson, Sandman, Bradley & Palladino, attorneys; Mr. Hankin, on the brief).
John Scott Abbott, Margate City, for defendant-respondent Planning Board (Mr. Scott, filed a statement joining in the brief of co-defendant-respondent K.D. Partners, L.P.).
L. Gilbert Farr, submitted a brief on behalf of amicus curiae Longport Civic Association.
Before Judges LONG, WEFING and CARCHMAN.
CARCHMAN, J.A.D.
Defendant K.D. Partners, L.P. (K.D.) sought a use variance from defendant Planning Board of the Borough of Longport (the Board) to allow the conversion of an existing hotel to an eight-unit hotel with kitchen facilities. The application also sought relief from certain bulk requirements imposed by the zoning ordinance. The application was successful, but a neighboring property owner, plaintiff James P. Meehan, filed an action in lieu of prerogative writs in the Law Division challenging the approval. The Law Division "voided" the approval and concluded that it was an improper conflict of interest for a member of the Board to deliberate in a matter where that member's father was a witness in the hearings.[1] K.D. appealed. While the appeal was pending, Meehan and K.D. "settled." We remanded the matter to the Law Division "for the limited purpose of enabling [K.D.] to file and serve a motion for relief from the judgment [reversing the action of the Board.]" The trial judge, without a hearing, signed a consent order vacating the final judgment and granting K.D.'s site plan approval and variance relief. The consent order dismissed the pending action in the Law Division.
On February, 18, 1998, the day the order was signed, Thaddeus J. Bartkowski, another adjacent property owner, forwarded a letter to the Law Division indicating his intention to " interplead" in this matter. Approximately thirty days later, Bartkowski filed a motion seeking to intervene in the dismissed action. The trial judge denied intervention. Bartkowski appeals. We now reverse and conclude that Bartkowski was entitled to intervene *940 but that such intervention is limited to challenging the appropriateness of the settlement entered into by the parties.
A full understanding of the procedural posture of this case requires a discussion of some additional facts. Although not germane to our decision, we summarize the other related actions involving this project since we have instructed the trial judge that he may consider such matters on remand. The application for relief before the Board necessitated a use variance to allow kitchen facilities in the proposed units. Subsequent to K.D.'s application for such relief, Longport Township amended its ordinance to allow such facilities. In response to that amendment, an organization known as the Longport Civic Association (the Association) filed a complaint in lieu of prerogative writs [the LCA action] challenging the validity of the amendment. K.D. intervened in that action.
On February 25, 1998, counsel for K.D. and the Association executed a stipulation of dismissal which provided:
This matter in difference in [the LCA action] having been amicably adjusted by and between the parties, it is hereby stipulated and agreed that the same be and is hereby dismissed with prejudice and without costs against any party.
It is further agreed that each party, their agents, servants, officers, members and employees hereby release every other party to the within action, their agents, servants, officers, members, employees and counsel, from any further claims, demands, actions or causes of action of, relating to or arising out of the subject matter of the above captioned action, and shall not directly or indirectly challenge or cause to be challenged previous developmental applications of [K.D.] or decisions and/or determinations of the Borough of Longport with respect to the subject matter of this suit, and further including any claims pursuant to [R.1:4-8].
On April 3, 1998, the trial judge entered an order enforcing the settlement.
On April 11, 1998, Bartkowski filed a motion to intervene in the LCA action and to vacate the April 3 order enforcing the settlement. While he maintained that he was not a member of the Association bound by the settlement, Bartkowski stated that he sought to intervene and vacate the order only because K.D. maintained that the settlement barred Bartkowski's intervention in the Meehan case (the subject of this appeal). In his motion, Bartkowski contended that the Association's dismissal did not apply to individual members, and that counsel for the Association was not authorized to sign the stipulation of dismissal on behalf of the Association unless a provision was added allowing individual members to challenge K.D.'s development plans.[2]
On May 18, 1998, the Association also filed a motion to vacate both the February 25 settlement and the April 3 order enforcing it. Like Bartkowski, the Association raised issues concerning counsel's authority to execute the stipulation of dismissal on behalf of the Association.[3]
Additionally, despite its then-pending appeal of the November 20, 1997, order voiding its first site plan approval, K.D. submitted another development application (the second plan) to the Board on December 10, 1997, which was nearly identical to the first plan, except that the kitchen-use variance was no longer required because of Longport's amended ordinance. The Board subsequently approved this second plan on December 16, 1997. On March 16, 1998, three days before filing the motion to intervene on the first plan which is the subject of this appeal, Bartkowski filed his own complaint in lieu of *941 prerogative writs challenging the Board's approval of K.D.'s second plan.[4]
Finally, on March 20, 1998, Bartkowski filed his motion to intervene and vacate the February 18, 1998, consent order which is the subject of this appeal. The trial judge denied the motion on April 17, 1998, and offered three reasons for his ruling. First, he stated that Bartkowski's motion to intervene was untimely to the extent he "slept on his rights" after becoming aware that Meehan ceased to adequately represent his interests in December 1997. Second, he noted that public policy favors settlements and "[t]he idea that a person not a party to a suit could intervene after a settlement and attempt to overturn a settlement is abhorrent." Third, the judge concluded that since the case was settled by the parties, it ceased to exist and left nothing in which to intervene. He also observed that his decision was not based upon the fact that Bartkowski was or was not a member of the Longport Civic Association.

I.
We first address the issue of the denial of Bartkowski's application to intervene as of right. R. 4:33-1 establishes the four criteria for determining intervention as of right:
The applicant must (1) claim "an interest relating to the property or transaction which is the subject of the transaction," (2) show he is "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest," (3) demonstrate that the "applicant's interest" is not "adequately represented by existing parties," and (4) make a "timely" application to intervene.
[Chesterbrooke Ltd. Partnership v. Planning Bd., 237 N.J.Super. 118, 124, 567 A.2d 221 (App.Div.), certif. denied, 118 N.J. 234, 570 A.2d 984 (1989).]
We have construed this rule liberally and stated that "[t]he test is whether the granting of the motion will unduly delay or prejudice the rights of the original parties." Atlantic Employers Ins. Co. v. Tots & Toddlers Pre-School Day Care Ctr., 239 N.J.Super. 276, 280, 571 A.2d 300 (App.Div.), certif. denied, 122 N.J. 147, 584 A.2d 218 (1990). As the rule is not discretionary, a court must approve an application for intervention as of right if the four criteria are satisfied. Chesterbrooke, supra, 237 N.J.Super. at 124, 567 A.2d 221.
We have addressed the application of R. 4:33-1 in the context of land use litigation in Chesterbrooke, supra, and Warner Co. v. Sutton, 270 N.J.Super. 658, 637 A.2d 960 (App. Div.) (Warner I), appeal decided by 274 N.J.Super. 464, 644 A.2d 656 (App.Div.1994) (Warner II). In Chesterbrooke, defendant planning board denied plaintiff developer's application for subdivision approval and certain variances. Plaintiff then filed a complaint in the Law Division and was granted automatic approval under N.J.S.A. 40:55D-61. When the planning board decided to execute a stipulation of dismissal rather than appeal developer's approval, however, non-party neighbors to the subject property filed a motion to intervene merely to "continue the legal process by use of appeal." The motion judge denied their motion stating that the "basic adjudication" was finished, and there was "nothing left to be done in the trial court." Id. at 123, 567 A.2d 221.
We reversed and granted the motion to intervene as of right, finding the intervenors filed their motion timely and met the criteria of R. 4:33-1. First, we noted that non-parties owning property neighboring a potential subdivision do have an interest sufficient to satisfy the first criterion.[5]
Next, we held that once the planning board decided not to appeal the developer's plan approval, the board ceased to adequately represent the intervenors' interests and left them "so situated that [the] `disposition of the action' would impair their ability to protect *942 their interest." Id. at 124-25, 567 A.2d 221. Indeed, the intervenors' interest "could not otherwise be protected without intervention." Id. at 125, 567 A.2d 221. Finally, we held that the motion judge erred by finding intervenors' application untimely. Rather, a motion judge must consider "the purpose of the intervention motion in relation to the stage of the action when the motion is made." Ibid. Therefore, we articulated the applicable standard to evaluate timeliness as follows: "[w]hen an intervenor seeks intervention `after the final judgment' and only `for the purpose of appealing,' the critical inquiry is simply `whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment.'" Ibid. (quoting United Airlines, Inc. v. McDonald, 432 U.S. 385, 387, 395-96, 97 S.Ct. 2464, 2466, 2470-71, 53 L.Ed.2d 423, 427, 433 (1977)).
We also addressed the developer's contention that the neighbor's intervention would force it to engage in a lengthy appeal process, causing meaningful, practical and extensive delay. After conceding that the developer's contention was true, we noted that it was also "legally irrelevant" as such delay "is inherent in any successful post-judgment application for intervention solely for the purpose of appealing the judgment" and "cannot alone form the prejudice necessary to defeat the application." Id. at 125-26, 567 A.2d 221.
We were confronted with a similar intervention issue in Warner I, supra. There, when land on which they had previously engaged in mining activity was rezoned a "conservation zone," Warner filed an action in lieu of prerogative writs challenging the rezoning. The parties subsequently reached a settlement which was ultimately memorialized in an amended consent order. After the consent order was filed, three nonprofit public interest corporations moved to intervene, and the Law Division denied the applications as untimely. Id. at 662, 637 A.2d 960.
We reversed, focusing primarily on the issue of timeliness. While there were allegations that the intervenors were aware that the Township ceased to adequately represent their interest well before the consent order was finalized, we held that the controlling date was the entry of the final consent order, since only then did the interests of the Township and the intervenors truly diverge. Id. at 664-65, 637 A.2d 960. We noted that the intervenors' awareness of the underlying litigation or public hearings incident thereto "should not be dispositive where, as here, post-judgment intervention is sought solely to appeal the judgment," reasoning that "[s]ince the sole purpose for intervention is to appeal the amended consent order, the question is whether movants acted promptly after entry of that order." Id. at 666-68, 637 A.2d 960. Noting that post-judgment intervention solely for appeal purposes has been found timely when made within the time applicable for filing an appeal,[6] we concluded that intervenors, who filed on the forty-fifth day, had timely sought intervention. Ibid. (citing United Airlines v. McDonald, supra, 432 U.S. at 395 n. 16, 97 S.Ct. at 2470 n .16, 53 L. Ed.2d at 433 n. 16). We also addressed whether the intervenors' ability to protect their interests was "impaired or impeded" as they could potentially challenge the consent order by way of their own action in lieu of prerogative writs. Without passing on whether intervenors actually could bring a separate action, we concluded that "prosecution of such a case would be circuitous and would unnecessarily expend judicial and financial resources." Id. at 668, 637 A.2d 960.
Applying the principles that we enunciated in Chesterbrooke, supra, and Warner I, supra, Bartkowski satisfied the four criteria and was improperly denied the right to intervene. As an owner adjacent to the subject property, he has a direct interest "relating to the property." Specifically, he opposes K.D.'s development plan as he contends it will "diminish his property value and will lessen the quality of enjoyment of light, air, and quiet."
As to the second and third criteria, his interest was adequately represented by Meehan until February 18, 1998. Indeed, Mr. Meehan had successfully prosecuted the Law *943 Division action voiding the approval. However, when the consent order between K.D. and Meehan was entered reinstating the Board's approval of K.D.'s first plan on February 18, 1998, Bartkowski's and Meehan's interests were no longer parallel. Bartkowski's position could no longer be protected absent intervention.
Finally, with regard to the fourth criteria, we conclude that Bartkowski's motion to intervene was filed in a timely fashion. In his memorandum decision denying Bartkowski's motion to intervene, the trial judge stated that Bartkowski's motion was untimely since "it clearly appears that [Bartkowski] was aware in [December 1997] that Meehan had abandoned the position that movant thought would be advantageous to him." Even if accurate, we have held that timeliness should be evaluated in relation to the entry of the consent judgment at issue rather than "an objector's knowledge of the underlying litigation, or his participation in public hearings." Warner I, supra, 270 N.J.Super. at 665-66, 637 A.2d 960. The certainty provided by this bright-line rule eliminates a consideration, finding or interpretation of constructive knowledge. We view its application here as appropriate. Here, Bartkowski's application was filed thirty days after the order was entered and well within the time we approved in Warner. We conclude that the trial court erred in denying Bartkowski's application for intervention.

II.
Having determined that Bartkowski should be permitted to intervene, we must determine the scope of his intervention. He argues, without citing any authority, that by reason of his intervention, the February 18, 1998, consent order must be set aside. We disagree. We conclude that his intervention is limited to a challenge of the settlement. While we conclude that his application to intervene as of right was timely so as to entitle him to the right of intervention, his delay in acting does serve as a limitation on the nature of his intervention. He was aware of the settlement and the progress of the proceeding in both the Law Division and before us. He cannot sit idly by and allow the matter to proceed and then simply by the fact of intervention, suggest that what has transpired earlier is of no moment. This limitation on his intervention is consistent with our approach in Warner II and represents a sound balance between his late intervention and the protection of his rights. Of course, in challenging the settlement, Bartkowski may argue that the settlement is unlawful or raise any other issues as to the bona fides of the settlement which he deems appropriate.
We add the following comments regarding the role of the Law Division as a result of Bartkowski's challenge to the settlement. In his original order voiding the action of the Board, the trial judge found that there was a conflict of interest. On February 18, 1998, the trial judge entered an order reciting that "plaintiff has reconsidered his factual and legal contentions as a result of which the plaintiff has chosen to consent to vacate the November 20, 1997, Final Judgment and to dismiss his Complaint in Lieu of Prerogative Writs with prejudice." The order also provided that "the Court determined the entry of this Order is not contrary to the public interest." The order then reinstated the prior site plan approval and variance relief. The record before us fails to reveal whether there was any hearing or discussion of this matter in open court prior to the execution of the order and the various "findings" that were made.
As we have indicated, Bartkowski's relief as intervenor will be limited to challenging the settlement. At such time, the proper role of the trial judge will be to provide judicial oversight, not act in the role of the Board, a distinction which we recognized in Warner II. "The judge should first make a threshold finding as to whether any of the settlement terms ... are illegal or void as against public policy." Warner II, supra, 274 N.J.Super. at 483, 644 A.2d 656. See also Hon. Richard S. Cohen, Hon. Douglas K. Wolfson & Kathleen Meehan DalCortivo, Settling Land Use Litigation While Protecting The Public Interest: Whose Lawsuit Is This Anyway, 23 Seton Hall L.Rev. 844, 864 (1993). In this regard, the trial judge should specifically address the issue of the right of *944 the parties to "settle" the conflict of interest issue which the trial judge had previously found dispositive in voiding the earlier approval. We question, without deciding, whether his withdrawal can serve to resurrect an approval which has previously been voided by the Law Division.
We also question the nature of the "settlement." The record only reveals that the "settlement" involved the withdrawal of Meehan's opposition to the appeal and proposed plan. Whether this in fact constitutes a "settlement" entitled to deference, as the trial judge found, is a question to be addressed by him on remand. We raise this because all parties, including the trial judge in his February 18, 1998 order, recognize the presence of a pervasive "public interest" in a land use dispute. As has been observed;
Central to any discussion of the public interest inherent in zoning disputes is a recognition that this interest encompasses collective public rights that may transcend the interests of any landowner or applicant appearing before a local agency. An applicant or a neighboring "objector" to a proposed development may happen to represent some or all of the public interests involved. That coincidence is not a reliable source of protection. Instead, the collective or general public interest in the resolution of a case warrants independent attention.
[Cohen, Wolfson and DalCortivo, Settling Land Use Litigation ..., supra, Seton Hall L.Rev. at 846.]
Where the action of a municipal agency has been declared void because of a conflict of interest, the interests of the public, both real and perceived, require a precise and full articulation of why such conflict no longer stands as an impediment to approval of that same agency's action simply because of an objector's decision to no longer object to such action. All of these issues may be explored by Bartkowski on intervention. By raising these issues we neither suggest a result nor limit the extent of judicial oversight required by the intervention, nor do we impose any limits on the inquiry by the trial judge or to the remedies that may be available to the trial judge in ultimately resolving the issues in dispute. So, too, the trial judge may consider the impact of the second plan approval and any other circumstances that may be relevant to ultimately determining the rights of the parties and the public interest as well.
We reverse and remand this matter to the Law Division for proceedings consistent with this opinion.
NOTES
[1] Ironically, the father and son took contrary positions regarding the application.
[2] This motion is still pending.
[3] This motion is also still pending. In the same action (despite the stipulation of dismissal, order enforcing the same and Bartkowski's and the Association's pending motions to vacate the stipulation of dismissal and order of enforcement), the Association also filed a motion requesting that the trial judge recuse himself on the matter, which the judge denied on July 15, 1998. On August 10, 1998, the Association filed a motion in the Appellate Division for leave to appeal nunc pro tunc the July 15 order denying their motion for recusal. We denied that motion.
[4] This action is also still pending in the Law Division.
[5] To emphasize this point, we quoted the Law Division judge approvingly: "`it is in fact common for neighboring property owners in these zoning or subdivision matters to participate in prerogative writ trials,' and `I always, always, always grant a neighboring property owner the right to intervene if he or she seeks to do so in timely fashion.'" Id. at 124, 567 A.2d 221.
[6] See R. 2:4-1(a) (requiring that appeals from final judgments be filed within forty-five days from the entry of the judgment).