**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5011-15T1
        NO. A-5201-15T1


NORTH HUDSON SEWERAGE AUTHORITY,
a Body Corporate and Politic of
the State of New Jersey,

    Plaintiff-Respondent,

v.

HARTZ MOUNTAIN INDUSTRIES, INC.,
a New York Corporation,

    Defendant-Appellant,

and

STATE OF NEW JERSEY and TOWNSHIP OF
WEEHAWKEN, a Municipal Corporation
of the State of New Jersey,

    Defendants.

_____

NORTH HUDSON SEWERAGE AUTHORITY,
a Body Corporate and Politic of
the State of New Jersey,

    Plaintiff-Respondent,

v.

HARTZ MOUNTAIN INDUSTRIES, INC.,
a New York Corporation, STATE OF NEW JERSEY,

and TOWNSHIP OF WEEHAWKEN, a
Municipal Corporation of the
State of New Jersey,

    Defendants.

_____

1500 HARBOR BOULEVARD PARTNERS,
LLC,

    Appellant.

_____

> Argued March 14, 2018 — Decided July 26, 2018
>
> Before Judges Fuentes, Koblitz and Manahan.
>
> On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1722-14.
>
> Anthony F. Della Pelle argued the cause for appellant Hartz Mountain Industries, Inc. (in A-5011-15) (McKirdy and Riskin, PA, attorneys; Anthony F. Della Pelle, of counsel and on the brief; Daniel Kim, on the brief).
>
> Dennis J. Drasco argued the cause for appellant 1500 Harbor Boulevard Partners, LLC (in A-5201-15) (Lum, Drasco and Postian, LLC, attorneys; Dennis J. Drasco and Kevin J. O'Connor, of counsel and on the brief).
>
> John J. Curley argued the cause for respondent (John J. Curley, LLC, attorneys; John J. Curley, of counsel; Jennifer J. Bogdanski, on the brief).

PER CURIAM

    1500 Harbor Boulevard Partners, LLC (1500 Harbor) appeals from a December 8, 2014 order denying its motion to intervene in a condemnation claim filed by North Hudson Sewerage Authority (NHSA) against Hartz Mountain Industries, Inc. (Hartz), the State

2                     A-5011-15T2

of New Jersey, and the Township of Weehawken.[1]  After a bench trial, Hartz appeals from a May 20, 2016 award of $569,774.61 in compensation damages.  We consolidate these appeals for the purpose of writing one opinion.  We affirm the denial of intervention and remand for reconsideration of the condemnation award.

On April 14, 2014, NHSA sought four easements on Hartz property, a ninety-acre tract known as Lincoln Harbor, which has been under development for thirty years.  Hartz had built a 582-unit luxury apartment complex called Estuary on a riverfront portion of Lincoln Harbor with unimpeded views of the New York City skyline.  Hartz owns approximately ninety-two percent of Estuary.

NHSA's four easements were needed to construct and maintain a sewer pipeline to manage Weehawken storm water.  Permanent Easement B provides for the installation, operation, and maintenance of a ninety-six inch sewer pipe that is located within the right of way of Riverview Terrace, a private street owned by Hartz.  The total area of Permanent Easement B is 14,424 square feet.  Temporary Easement A, lasting ten months, is designed to provide sufficient space for construction activities for Permanent

---

[1]  Neither the State of New Jersey nor the Township of Weehawken appeared in the litigation.

A-5011-15T2

Easement B.  The area of Temporary Easement A is 19,638 square feet.

Permanent Easement D provides for the construction of a platform above the Hudson River as well as the construction of a superstructure for two sewer outfalls that will discharge storm water and treated sewage below the Hudson River's surface.  The total area of Permanent Easement D, the Outfall Facility, is 17,875 square feet, and it will be constructed level with the existing Hudson River Walkway.

Each new outfall constructed on this platform will have hidden netting chambers that will be equipped with a system to catch floatables — solid objects larger than one-half inch in diameter.  The netting system will be accessed from the top of the platform and is maintained by a truck and boom system that removes and replaces the nets periodically.  Temporary Easement C, lasting twelve months, is designed to provide space for the construction of Permanent Easement D.  The total area of Temporary Easement C is 4600 square feet.

On June 23, 2014, the trial court entered final judgment allowing NHSA to exercise its eminent domain power and appointing Condemnation Commissioners to determine just compensation.  N.J.S.A. 20:3-12.  On November 19, 2014, 1500 Harbor filed an unsuccessful motion to intervene in the condemnation action

pursuant to Rule 4:33-1 and requested an extension of the date for the Commissioners' hearing. The motion was denied on December 8, 2014. Five weeks later, a hearing was held before the Condemnation Commissioners. Two weeks later, the Commissioners issued their report, awarding $129,816 compensation to Hartz for the permanent easements and $11.25 per square feet for the temporary easements. Both NHSA and Hartz appealed from the Commissioners' report.

                                    I.

1500 Harbor owns the property known as "Pier D". It had received zoning approvals to build a 227 unit luxury residential development on the site. The Outfall Facility will be located within two feet of 1500 Harbor's property.

At the hearing for the motion to intervene, 1500 Harbor argued it may be entitled to severance damages because of the Outfall Facility and asserted unity of ownership and unity of use, giving it a sufficient interest to intervene in the underlying condemnation action. 1500 Harbor argued the severance damages would stem from the anticipated diminution in value of the soon-to-be-built north-facing apartments of 1500 Harbor's residential development due to the interruption in the view. 1500 Harbor's counsel stated that Hartz holds a significant ownership interest in 1500 Harbor.

The motion judge expressed concern "that the intervention at this point by 1500 Partners does not seem to me to fit into the summary proceeding course that is to be taken by condemnation actions." The judge also stated that even if the court were to accept both 1500 Harbor's unity of ownership and unity of use arguments, the issue regarding severance damages appeared premature and speculative. The judge also expressed concern regarding the fact that 1500 Harbor claims unity of ownership yet did not seek to participate earlier in the condemnation action. For these reasons, the motion court denied 1500 Harbor's motion to intervene, noting that if 1500 Harbor's property suffers damages, it could seek recovery in a separate action. We agree.

Intervention in a condemnation case is governed by the general intervention rule, Rule 4:33. Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:73-2 (2018). Rule 4:33-1 requires the moving party to show "an interest in the subject matter of the litigation, an inability to protect that interest without intervention, lack of adequate representation of that interest, and timeliness of the application." Pressler & Verniero, cmt. 1 on R. 4:33-1. "As the rule is not discretionary, a court must approve an application for intervention as of right if the four criteria are satisfied." N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 286 (App. Div. 2018) (quoting

Meehan v. K.D. Partners, LP, 317 N.J. Super. 563, 568 (App. Div. 1998)).

"Rule 4:33-1 is construed 'liberally.'" Allstate New Jersey Ins. Co. v. Neurology Pain Assocs., 418 N.J. Super. 246, 254 (App. Div. 2011) (quoting Meehan, 317 N.J. Super. at 568). "Consistent with this liberal construction, our courts take a practical approach in determining whether a moving party has a cognizable interest in litigation that it is entitled to protect by intervention." Id. at 254-55 (citing Am. Civil Liberties Union of N.J., Inc. (ACLU NJ) v. Cty. of Hudson, 352 N.J. Super. 44, 67-69 (App. Div. 2002)).

"[W]here intervention of right is not allowed, one may obtain permissive intervention under [Rule] 4:33-2." ACLU NJ, 352 N.J. Super. at 70 (quoting Atl. Emp'rs Ins. Co. v. Tots & Toddlers Pre-School Day Care Ctr., 239 N.J. Super. 276, 280 (App. Div. 1990)). Pursuant to Rule 4:33-2, a court may permit anyone to intervene in an action "upon timely application if the claim or defense and the main action have a question of law or fact in common." Exxon Mobil, 453 N.J. Super. at 286 (alterations omitted). 1500 Harbor did not seek permissive intervention.

When a public entity "takes private property for a public use, the property owner is entitled to 'just compensation' under our State and Federal Constitutions." Borough of Harvey Cedars

v. Karan, 214 N.J. 384, 388 (2013) (citing U.S. Const. amend. V and N.J. Const. art. IV, § 6, ¶ 3).  In a condemnation action, the parties are to include the "record owner, the occupant, if any, such other persons appearing of record to have any interest in the property and such persons claiming an interest therein as are known to the plaintiff."  R. 4:73-2.

"In condemnation cases, severance damages are awarded only when there is a partial taking of a parcel of realty, the uncondemned parcel and the condemned parcel are functionally integrated, and there exists a unity of ownership."  Union Cty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 150 (App. Div. 2007) (citing Hous. Auth. of Newark v. Norfolk Realty, 71 N.J. 314, 324 (1976)).

Rule 4:33-1, governing intervention as of right, is subject to de novo review.  Exxon Mobil, 453 N.J. Super. at 285.  1500 Harbor argues that the motion court erred when it denied 1500 Harbor's motion to intervene because the Outfall Facility is within two feet of 1500 Harbor's property and will clearly affect its property interests.  Although 1500 Harbor claims it will suffer a diminution in value of the apartments facing the Outfall Facility, it has not argued that it could not otherwise seek remedies in a separate action.  The motion judge stated that a claim for damages "may ripen into a claim based upon a theory of inverse

8

condemnation."  Therefore, 1500 Harbor has not shown that the disposition of the underlying action impairs or impedes its ability to protect its interest.

Lastly, 1500 Harbor did not file its motion to intervene until one month after receiving an October 2014 public notice issued by the Army Corps of Engineers regarding the scope of the Outfall Facility and its proximity to 1500 Harbor's property.  1500 Harbor notes that NHSA's "Complaint and Declaration of Taking . . . described only the lands to be taken and did not specifically describe the sewer facilities to be constructed pursuant to the easements (which directly causes the severance damages to [1500 Harbor's] property)."  The motion court, however, expressed concern regarding why 1500 Harbor did not move to intervene in the matter sooner, if it had unity of ownership with Hartz.

1500 Harbor's counsel was not prepared to present evidence of damages to 1500 Harbor's property, but instead set forth 1500 Harbor's belief that its north-facing apartments would diminish in value due to the construction of the Outfall Facility.  The letter submitted by 1500 Harbor from McLaren Engineering Group discussed what the engineers saw as possible problems that construction of the Outfall Facility could cause to 1500 Harbor's property.

Reviewing the evidence presented by 1500 Harbor de novo, we agree with the motion judge that, even if it could prove unity of use and ownership, the possible damages are speculative and could be addressed in a later proceeding. The delay in moving to intervene given a unity in ownership also would have delayed the entire proceedings. We affirm the order denying intervention.

II.

A.

We are compelled to reverse the award of condemnation damages and remand for reconsideration due to certain erroneous rulings. "The concept of 'unity of ownership' . . . is flexible and does not require a rigid definition of ownership on the basis of bare legal title." Artaki, 392 N.J. Super. at 149. "[A]ll parcels of real property, whether contiguous or noncontiguous, that are in substantially identical ownership . . . shall be treated as if the entire property constitutes a single parcel." Norfolk, 71 N.J. at 325. (alteration in original) (emphasis in original) (quoting Uniform Eminent Domain Code, § 1007 (1974)).

Paul Beisser, NHSA's expert, valued the taking using the comparable sales approach. He concluded that the underlying land value was $1.8 million — $41.32 per square foot of each easement area. Albert F. Chanese, Hartz's expert, valued the taking using the same methodology, and concluded that the underlying land value

was $11.6 million — $265.70 per square foot of each easement area. The court fully accepted Hartz's valuation of the property. Hartz does not appeal from this determination and NHSA does not cross-appeal.

Each expert also rendered opinions about the value of the specific easements. Beisser reduced his value of the property subsumed by Permanent Easement B by ten percent to reflect the value of the limited easement interest. Although Permanent Easement D was ultimately developed, Beisser attributed no value to Easement D because, in his opinion, Easement D could not be developed. He determined that the value of Temporary Easements A and C should be based upon an eight-percent rate of return that was derived from the market value of the easement areas. He ultimately concluded that just compensation for the takings was $128,000, adjusted to $150,000 to reflect favorable market conditions.

Chanese concluded that Permanent Easement B represented twenty percent of the bundle of rights to that property, and valued this taking at $766,489. He concluded that Permanent Easement D represented twenty-five percent of the bundle of rights and valued this taking at $1,187,344. Chanese ultimately concluded that the total value of Easements B and D was $1,953,833, and the total

11                                                      A-5011-15T2

value of the two permanent easements and the two temporary easements was $2,463,300.

Chanese also concluded that Hartz suffered severance damages because of the taking. He concluded that Permanent Easement D would affect the view by a portion of Estuary residents because Estuary would be in direct view of the netting chamber and capture vault. He concluded that this construction would translate to a three-percent reduction in the value of the entire property, or severance damages of $2,910,000. Therefore, he concluded the total value of the taking at $5,373,000.

Our standard of review of trial court findings after an evidentiary hearing is limited. Gnall v. Gnall, 222 N.J. 414, 428 (2015). The court's decision, however, must be based on substantial evidence in the record. Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017).

Hartz argues that the trial court's decision to allocate a two-percent fee for the taking of Permanent Easement B, a one-percent fee for Permanent Easement D, and no severance damages to Estuary, was unsupported by the record. With respect to Permanent Easement B, Hartz states that the trial court's conclusion was based on a faulty premise — that B was a "replacement of an already-existing easement." Hartz accurately states that B encompassed 14,424 square feet and was "not previously encumbered

by an easement."  Defendant's own expert assessed a ten-percent fee for Easement B, yet the court assessed a fee of only two percent.

Hartz further argues that the trial court incorrectly noted "that the only detriment to the encumbered parcel is the presence of the pipe with no further access nor plan for continued maintenance nor access to it."  In fact, the easement granted access for maintenance.

The trial court found that "Permanent easement B represented a replacement of an already-existing easement and represents two percent of the bundle of rights" because "Permanent easement B, only very slightly, impacts on the surface area of the Estuary . . . ."  It found that Permanent Easement B did not "affect the use or the utility of the property, at all."  It calculated the value of NHSA's taking at $76,649.14, two percent of the total value of the land taken for Permanent Easement B.

As to Permanent Easement D, Hartz contends that the trial court "erroneously speculated that the 'decorating scheme' would somehow cure the sign of trucks and other equipment."  Hartz argues that the design of the system could change at any moment, but this is its only opportunity to "receive compensation."  Last, Hartz contends that the trial court incorrectly determined that the

impact of a truck utilized monthly to help maintain the sewer outfall structure is negligible.

With respect to Permanent Easement D, the court found that "the land on which the platform is to be constructed has very little, if any, development potential" because of the "presence of the existing sewer outfall" and the "allowable density of the development" would not be reduced. It continued: "The Court acknowledges that the permanent easement D may create a slight visual impediment of the New York City skyline by a few of the occupants of the Estuary." It recognized the "decorating scheme" would help "blend in" the "apparatus." Furthermore, it found the "periodic presence of the boom truck would be negligible because of the expressed lack of frequency of the use of this equipment . . . ." For these reasons, it found a one-percent fee for the imposition of Permanent Easement D, valued at $47,493.87.

The Fifth Amendment to the United States Constitution and Article I, Paragraph 20 of the New Jersey Constitution provide that private property may not be taken for public use without just compensation made to the owners. N.J.S.A. 40A:12-4(a) provides:

> Any county or municipality may acquire:
>
> Any real property, capital improvement, personal property or any interest or estate whatsoever therein, including easements, water, water power, or water rights, either within or without the county or municipality, except that no such property belonging to the

A-5011-15T2

State or any of its agencies, a county or any municipality shall be acquired without its express consent.

Property is defined under the eminent domain statute as "land, or any interest in land." N.J.S.A. 20:3-2(d). "An easement constitutes an interest in land, and the owner must be compensated" for its value. Twp. of Manchester Dep't of Utils. v. Even Ray Co., Inc., 315 N.J. Super. 122, 132 (App. Div. 1998). "Just compensation is a function of the value of the property in light of its highest and best use, which is ordinarily evaluated in accordance with current zoning ordinances." Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 119 (2013).

"[T]here is no precise and inflexible rule for the assessment of just compensation. The Constitution does not contain any fixed standard of fairness by which it must be measured. Courts have been careful not to reduce the concept to a formula." State v. Caoili, 135 N.J. 252, 271 (1994) (quoting Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374, 387-89, (1971)).

The court, as a factfinder, "may accept some of the expert's testimony and reject the rest. That is, a factfinder is not bound to accept the testimony of an expert witness, even if it is unrebutted by any other evidence." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430-31 (App. Div. 2001) (citations omitted). But

15                                                    A-5011-15T2

findings must be based on substantial evidence. Ricci, 448 N.J. Super. at 564.

The trial court calculated the taking of Permanent Easement B based on its "replacement of an already-existing easement" and the nominal effect it would have on the surface area. The court failed to explain in what way even the defense expert so dramatically overvalued the percent of damages, at ten percent rather than the two percent the judge found.

## B.

Our Supreme Court, in State by Comm'r of Transp. v. Silver, 92 N.J. 507, 514 (1983), wrote:

> [W]here only a portion of a property is condemned, the measure of damages includes both the value of the portion of land actually taken and the value by which the remaining land has been diminished as a consequence of the partial taking. The diminished value of the remaining property constitutes the severance damages visited upon that property as a result of the taking.

Regarding the effect on the Estuary, the trial court wrote: "Severance damages are not appropriate and will not be awarded. Although the property is impacted by these easements, the Court does not find that they [] so substantially impact the premises to represent a diminution in the total value of the property to justify an award." The court also found no unity of ownership.

The court erred in finding no unity of ownership because Hartz owned "only" 92.5% of Estuary. In <u>Artaki</u>, 392 N.J. Super. at 149-50, we wrote, "The concept of 'unity of ownership' suggests that physically separate parcels are owned in their entirety by one owner or set of owners. The concept, however, is flexible and does not require a rigid definition of ownership on the basis of bare legal title." The "fluid interpretation of the unity of ownership" was addressed by the New Jersey Supreme Court in <u>Norfolk</u>, 71 N.J. at 324. <u>Id.</u> at 150.

When determining unity of ownership, the Court addressed the question of "whether strict unity of title in a given entity must exist, or whether ownership is a matter of substance rather than form so that identity of beneficial interest will suffice." <u>Norfolk</u>, 71 N.J. at 324. The Court concluded:

> However, the concept of eminent domain requires that the realities underlying corporate ownership of land be fairly recognized. Normal business considerations, including due regard for federal tax consequences, may indicate that a bifurcated ownership of the assets of a functionally integrated enterprise is more desirable than ownership by a single entity. The law should not require businessmen to ignore otherwise sensible economic planning decisions in order to retain their right to full actual damages consequent upon a public taking.
>
> [<u>Ibid.</u>]

Thus the trial court's conclusion that there was no unity of ownership because "Estuary is owned by three different entities, with Hartz possessing only a 92.5% interest in that property" is incorrect.

In evaluating unity of use, the court overlooked that the entire Lincoln Harbor has been developed by Hartz, that the site has been treated as a "single planned development unit," and that Hartz essentially controls Estuary. Additionally, and most importantly, because Estuary is contiguous to the easement property, unity of use need not be demonstrated. Manalapan Twp. v. Genovese, 187 N.J. Super. 516, 521 (App. Div. 1983) ("[T]o recover severance damages, an owner must prove either that the parcels were contiguous or that they were constituent parts of one economic unit.").

The trial court focused on its perception that Hartz had to prove a unity of use, writing:

> To establish a unity of use, the landowner must demonstrate that any non-contiguous lots were constituent parts of a single economic unit. Cty. of Middlesex v. Clearwater Vill., Inc., 163 N.J. Super. 166, 174 (App. Div. 1978); State v. Whitehead Bros. Co., 210 N.J. Super. 359, 366 (Law Div. 1986).
>
> [(Emphasis added).]

NHSA does not dispute that the Estuary and the "part taken" are, in fact, contiguous, but rather argues that the parcels are

not part of a single economic unit. To recover severance damages, Hartz need only prove "<u>either</u> that the parcels were contiguous <u>or</u> that they were constituent parts of one economic unit." <u>Manalapan</u>, 187 N.J. Super. at 521 (emphasis added). Because Hartz demonstrated both unity of ownership and that the parcels were contiguous, Hartz is entitled to recover severance damages.

We reverse and remand with regard to the award for Easement B as well as severance damages for Estuary. The court should explain the foundation for its awards.

A-5201-15 is affirmed. A-5011-15 is reversed and remanded for reconsideration. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION