237 N.J. Super. 118 (1989)
567 A.2d 221
CHESTERBROOKE LIMITED PARTNERSHIP, PLAINTIFF-RESPONDENT,
v.
PLANNING BOARD OF TOWNSHIP OF CHESTER, DEFENDANT-RESPONDENT, AND AUGUSTUS AND JANE KNIGHT, OBJECTORS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1989.
Decided September 27, 1989.
*120 Before Judges KING, BRODY and ASHBEY.
Robert A. Baime argued the cause for appellants (Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, attorneys; Robert A. Baime and Sharon L. Levine, on the brief).
Dean A. Gaver argued the cause for respondent Chesterbrooke Ltd. (Hannock Weissman, attorneys; Dean A. Gaver and Susan R. Rubright, on the brief).
James R. Hillas, Jr., attorney for respondent, filed a statement in lieu of brief.
The opinion of the court was delivered by KING, P.J.A.D.
This case presents issues concerning (1) intervention as of right for purposes of appeal under R. 4:33-1, (2) automatic approval of variance applications under N.J.S.A. 40:55D-61, and (3) the power to grant so-called "flexible variances" under N.J.S.A. 40:55D-70(c)(2) for substantially sized tracts.
Chesterbrooke Limited Partnership (plaintiff) is the owner of a 570-acre parcel of land in the Township of Chester. It applied to the Planning Board of the Township (Board) for subdivision approval and for certain variances, pursuant to N.J.S.A. 40:55D-70c(2) of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -112, in order to create an 82-lot subdivision using a "lot averaging plan." Plaintiff's 570-acre parcel *121 was in the R-5 zone, which permitted single-family residences on a minimum lot size of five acres, with a minimum lot width of 300 feet at the front setback line and an inscribed circle with a minimum diameter of 300 feet tangent to the front setback line. This zone also required a front yard of 80 feet, one side yard of 50 feet, two side yards totalling 120 feet, and a rear yard of 80 feet.
Under plaintiff's lot averaging plan, 76 wetland acres of its 570-acre parcel were dedicated to the Morris County Park Commission for park purposes and 27 acres were dedicated for road rights-of-way. The remaining 467 acres were divided into 82 lots varying in size from 2.7 acres to 22.33 acres, resulting in an arithmetical "average lot size" of about five acres.
Specifically, plaintiff's plan created 39 lots of under five acres each; two of these lots were under three acres each. The plan also created 27 lots with a width of less than 300 feet at the front setback line and three lots with a width of less than 275 feet. It created 21 lots with an inscribed circle having a diameter of less than 300 feet tangent to the front setback line, and two lots with an inscribed circle of less than 275 feet in diameter. The plan also required some variances from the zoning ordinance's side yard and rear yard requirements.
This is the procedural background. On May 18, 1987 plaintiff filed its application which was certified as complete as of July 27, 1987. The Board held public hearings in 1987 on August 25, September 8, October 13, November 10 and on December 8, when plaintiff finished its evidentiary presentation. The Board asked for an extension until January 12, 1988, which plaintiff refused. The Board then voted to deny the application "without prejudice."
On January 12, 1988 the Board described the relief sought by plaintiff as "massive in scope" and adopted a written resolution memorializing its December 8, 1987 decision. The Board noted that at the end of the December 8 meeting it had asked plaintiff to consent to an "extension of time until January 12, 1988 to *122 permit members of the public to be heard, there not having been sufficient time for this purpose on December 8." The Board felt that its extension request was "modest and reasonable" and that it did not constitute "undue delay." It also felt that plaintiff's refusal to grant the extension was "unreasonable" and that because of that refusal, the Board "lack[ed] sufficient information upon which to make an informed decision concerning the merit of this application." The Board denied the application without prejudice, because "further delay would result in an approval by default, by operation of law, which would be contrary to the intent of the Municipal Land Use Law and local ordinances enacted thereunder."
Plaintiff then filed a timely complaint and amended complaint in the Law Division and the Board answered. On June 7, 1988 the matter was argued and the judge rendered an oral decision granting automatic approval of the application pursuant to N.J.S.A. 40:55D-61. However, he gave the Board additional time to submit proposed "standard conditions" to be "attached to the approval" (i.e., "the standard kind of conditions that you always have in these ... major subdivision approvals").
On June 26, 1988 the judge entered a final judgment declaring the application "approved, including the granting of all requested and necessary variances therefor." He dismissed all other claims asserted by plaintiff. On June 30, 1988 the judge held a hearing to discuss the standard conditions.
On July 28, 1988 the Board held a public meeting. It voted not to appeal the June 16, 1988 judgment and to execute a stipulation of settlement to "fully and finally conclude this matter."
On July 29, 1988 appellants and objectors, Augustus and Jane Knight, who owned property within 200 feet of plaintiff's parcel, filed their intervention motion. They sought merely to "intervene and appeal." That is, they sought intervention not to "start the process from the beginning," but only to "continue the legal process by use of appeal."
*123 The judge denied their motion, because the "basic adjudication" was finished, and there was "nothing left to be done in the trial court." He concluded that the motion was "simply too late." On August 4, 1988, the day the motion was argued, the judge rendered an oral decision and entered an order denying it. On August 5, 1988 the objectors filed their notice of appeal from the August 4, 1988 order. On the same date objectors, by way of amended appeal, appealed the June 26, 1988 judgment.
On September 22, 1988 objectors filed a motion in this court for an order "permitting intervention on appeal." On October 28, 1988 plaintiff filed a motion for an order dismissing objectors' appeal of the June 26, 1988 judgment. On November 2, 1988 plaintiff and the Planning Board filed their stipulation of settlement which incorporated their agreed-upon approval conditions. On December 22, 1988 we denied plaintiff's motion and reserved ruling on the objectors' motion "pending consideration on the merits of the controversy." We now grant that motion.[1]

I
Objectors contend that they should have been allowed to intervene as of right pursuant to R. 4:33-1. We agree. Intervention after final judgment is allowed, if necessary, to preserve some right which cannot otherwise be protected. Tp. of Hanover v. Town of Morristown, 118 N.J. Super. 136, 142 (Ch.Div.), aff'd 121 N.J. Super. 536, 538 (App.Div. 1972), certif. den. 62 N.J. 427 (1973).
*124 Rule 4:33-1 sets out four criteria for determining intervention as of right. The applicant must (1) claim "an interest relating to the property or transaction which is the subject of the action," (2) show he is "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest," (3) demonstrate that the "applicant's interest" is not "adequately represented by existing parties," and (4) make a "timely" application to intervene. Intervention as of right under R. 4:33-1 is "not discretionary." Vicendese v. J-Fad, Inc., 160 N.J. Super. 373, 379 (Ch.Div. 1978). If all criteria are met, an application for intervention as of right "must be approved by the court." Ibid.
Because objectors do not have an interest "in" plaintiff's property, plaintiff claims they have no interest "relating to" the property or transaction which is the subject of this action. That is, plaintiff concedes that objectors "desire to intervene ... only to protect their own property interest ... as property owners located within 200 feet of plaintiff's property," but contends that protecting "their own independent property interest does not permit intervention as of right under R. 4:33-1."
The Law Division Judge disagreed. He said that, as people "who own property adjacent to the 500-plus-acre tract which was the object of the subdivision application," objectors were "parties who would have had a right to intervene [under R. 4:33-1] had they asserted it timely." He also said "it is in fact common for neighboring property owners in these zoning or subdivision matters to participate in prerogative writ trials" and "I always, always, always grant a neighboring property owner the right to intervene if he or she seeks to do so in timely fashion." The judge was correct in this respect. See Monroe Realty C. v. Middletown Properties, Inc., 182 N.J. Super. 659, 662 (Law Div. 1981).
Once the Board decided on July 28, 1988 not to appeal the June 16, 1988 final judgment, the Board no longer "adequately represented" objectors' interest; it left them so situated that *125 "disposition of the action" would impair their ability to protect their interest. When the Board decided not to appeal the judgment, objectors' interest could not otherwise be protected without intervention; there was no one available to protect their interest through an appeal. See Dillon Companies, Inc. v. City of Boulder, 183 Colo. 117, 515 P.2d 627, 629 (1973); Hukle v. City of Kansas City, 212 Kan. 627, 512 P.2d 457, 463 (1973).
Finally, in concluding that objectors' July 29, 1988 intervention motion was "simply too late" because there was "nothing left to be done in the trial court," the judge did not consider the purpose of the intervention motion in relation to the stage in the action when the motion was made. See Clarke v. Brown, 101 N.J. Super. 404, 410-411 (Law Div. 1968). See also, United States v. American Tel. and Tel. Co., 642 F.2d 1285, 1294 (D.C. Cir.1980). On the issue of timeliness, the court must consider the purpose for which intervention is sought. For example, if intervention is sought only for the limited purpose of taking an appeal, the only "prejudice to those already parties in the case" from granting intervention is the inherent "delay" necessarily involved in opposing the intervenor's appeal. 642 F.2d at 1294-1295. When an intervenor seeks intervention "after the final judgment" and only "for the purpose of appealing," the critical inquiry is simply "whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." United Airlines, Inc. v. McDonald, 432 U.S. 385, 387, 395-396, 97 S.Ct. 2464, 53 L.Ed.2d 423, 427, 433 (1977).
Plaintiff claims that, "if objectors are permitted to intervene and plaintiff is then forced to engage in a lengthy appeal process," there "will be a very practical, meaningful and extensive delay to plaintiff if ... it is forced to defend an appeal." While this contention is true, it is also legally irrelevant. Delay is inherent in any successful post-judgment application for intervention solely for the purpose of appealing the judgment. *126 It cannot alone form the prejudice necessary to defeat the application.
Intervenors-objectors here filed their intervention motion immediately after learning of the Board's decision not to file an appeal. Because they sought intervention solely to appeal the judgment, their motion was timely. They met all criteria in R. 4:33-1. They were entitled to intervention as of right.

II
We do not consider the intervenor-appellants' contention that the Law Division judge erred in ruling that the application should receive automatic approval pursuant to N.J.S.A. 40:55D-61 because "the Board failed to grant or deny the application on the merits" within the prescribed period. The evil that the automatic approval mechanism was "designed to remedy was municipal inaction and inattention." Allied Realty v. Upper Saddle River, 221 N.J. Super. 407, 418 (App.Div. 1987), certif. den. 110 N.J. 304 (1988); see Manalapan Holding Co. v. Hamilton Tp. Plan. Bd., 92 N.J. 466, 473-474 (1983). Here we conclude that the Planning Board had no initial jurisdiction to act upon the application because of its scope and dimension. Municipal inaction and inattention is not in issue. Since the application, in effect, called for a rezoning, we conclude that it was not an appropriate subject for a flexible c(2) variance under N.J.S.A. 40:55D-70c(2). Because the Board had no power to grant the application in any event, we need not entertain the appellants' contention that the "automatic approval" was error.

III
The crucial issue is one which the Law Division judge found "very troublesome." That is, whether the Board had the authority to entertain a "lot averaging" application where there was no local lot averaging ordinance. This was important because, as the judge observed, "before one can say that an application is time-approved [under N.J.S.A. 40:55D-61] one *127 should, as a threshold matter, be able to say that it was appropriate for the Board ... to be dealing with the application in the first place."
The Law Division judge noted that the Board and its attorney had serious reservations about the propriety of the application from the outset  whether it is "too big in terms of its methodological departure and in terms of the sheer number of variances which it involves." The record discloses that the Board's attorney had communicated these basic jurisdictional concerns to plaintiffs' attorney since early in the application process.
Resolution of the issue of the Board's jurisdiction over the application involves three considerations. First is N.J.S.A. 40:55D-40b of the MLUL, which says:
An ordinance requiring subdivision approval by the planning board pursuant to this article may also include:
....
b. Standards encouraging and promoting flexibility, economy and environmental soundness in layout and design in accordance with which the planning board may approve the varying, within a conventional subdivision, of lot areas and dimensions, and yards and setbacks otherwise required by municipal development regulations in such a way that the average lot areas and dimensions, yards and setbacks within the subdivision conform to the conventional norms of the municipal development regulations; provided that such standards shall be appropriate to the type of development permitted. [Emphasis supplied.]
As noted, the Township of Chester's ordinance had no such "averaging" provision.
Second is the Supreme Court's recognition in Medici v. BPR Co., 107 N.J. 1 (1987), of the Legislature's "apparent objective" and "strong legislative policy" of "encouraging municipalities to make zoning decisions by ordinance rather than by variance." Id. at 5, 23-24. That is, the MLUL's legislative scheme emphasizes the role of planning in land use regulation and zoning, not ad hoc decision-making. See Kaufmann v. Planning Bd. for Warren Tp., 110 N.J. 551, 557 (1988); Riggs v. Long Beach Tp., 109 N.J. 601, 619-622 (1988) (Handler, J., concurring).
*128 Third is the observation in AMG Associates v. Tp. of Springfield, 65 N.J. 101 (1974), that where a variance application "involves or affects a large tract or a substantial area comprising several tracts," the situation may be "beyond the intended scope of the variance procedure and the power of the local administrative agencies," and may "indicate the need for rezoning by the municipality." Id. at 110 n. 3. Judge Pressler noted this observation and expanded upon it in Tp. of Dover v. Bd. of Adj. of Tp. of Dover, 158 N.J. Super. 401 (App.Div. 1978).
Judge Pressler indicated that among the "dispositive considerations" which underlie the "statutory allocation of function" between the municipal governing body and its administrative zoning agencies was the governing body's "ultimate responsibility to establish, by the adoption of its zoning ordinances and amendments thereto, the essential land use character of the municipality." Id. at 411. It does this "by the geographical delineation of its districts and, uniformly within each district, the delineation of the uses permitted therein and the limitation schedules applicable thereto in terms of lot size, lot coverage, height restrictions and the like." Id. at 411-412. On the other hand, the "variance power" reposed in municipal zoning agencies is intended only to "accommodate individual situations which, for a statutorily stated reason, require relief from the restrictions and regulations otherwise uniformly applicable to the district as a whole." Id. at 412. That is, the agencies' variance power is expressly limited to a "specific piece of property," and is so confined to "avoid the potential" which this variance power "might otherwise have for substantially affecting the essential land use scheme of the entire district itself and perhaps of the entire municipality as well." Ibid.
Given this, the basic inquiry in each case must be "whether the impact of the requested variance will be to substantially alter the character of the district as that character has been prescribed by the zoning ordinance." Id. at 412-413. This inquiry "requires analysis and evaluation of such factors as the size of the tract itself; the size of the tract in relationship to *129 the size and character both of the district in which it is located and the municipality as a whole; the number of parcels into which it is anticipated that the tract will be subdivided if subdivision is part of the plan, and the nature, degree and extent of the variation from district regulations which is sought." Id. at 413. The test for determining whether the municipal zoning agency engaged in "proscribed legislation" is ultimately "one of both geographic and functional substantiality vis-a-vis the plan and the scheme of the municipality's zoning ordinance." Ibid.
Turning specifically to the "authority vested in zoning and planning boards" under N.J.S.A. 40:55D-70c(2) to grant "dimensional variances without a showing of hardship," the Supreme Court in Kaufmann noted that this authority is limited to a "very narrow band of cases," and that planning boards may exercise it only in applications "properly before them." 110 N.J. at 553, 560-561. The Court also described the amendment providing for "flexible c(2) variances," L. 1984, c. 20, § 12, as a redefinition of "the qualifications for a very limited class of nonhardship variances." Id. at 561. See Loscalzo v. Pini, 228 N.J. Super. 291, 302-303 (App.Div. 1988); WaWa Food Market v. Planning Bd., 227 N.J. Super. 29, 38-40 (App.Div. 1987); see also Morris Cty. F. Housing v. Boonton Tp., 230 N.J. Super. 345, 355 (App.Div. 1989). Moreover, every grant of a c(2) variance "must be rooted in the purposes of zoning and planning itself and must advance the purposes of the MLUL." Kaufman, 110 N.J. at 562.
Thus, by definition, no c(2) variance "should be granted when merely the purposes of the owner will be advanced." Id. at 563. By the same token, a planning board is not free to grant c(2) variances from "existing requirements just because it disagrees with those requirements." Id. at 564.
In sum, while the Legislature "intended through the c(2) variance to vest a larger measure of discretion in local boards in a limited area of cases," it also "confined the discretion" of *130 such boards. Id. at 564-566. These boards "cannot require [zoning] ordinances to suit the owner or their own idea of what municipal development regulations should be." Id. at 564. Rather, they must "seek ... to effectuate the goals of the community as expressed through its zoning and planning ordinances," and should grant a c(2) variance only if the proposed development "would put the land more in conformity with the community's development plans and thereby would advance the purposes of zoning." Ibid.
The Law Division judge recognized the merit to the objections to the application. He acknowledged that the plaintiff's 570-acre parcel was a "very substantial piece of real estate even in a relatively undeveloped municipality such as Chester Township." The judge was concerned by the "sheer number of lots" that required variances, which he felt were a "big" departure from the requirements of the R-5 zoning district. He observed that plaintiff wanted to depart from these requirements "on a very large scale." He also felt that, "in terms of methodology," plaintiff's application was "open to a serious challenge that it's simply setting aside the legislative scheme." The judge found it "very troublesome" that, based on the undisputed facts, the conclusion "might well be drawn that we're not dealing with the granting of a variance at all, we're dealing with the creation of a new zoning district with dimensional regulations markedly, and in a widespread way, at variance with what the legislative scheme calls for."
The Township here had not enacted an optional, averaging, subdivision ordinance as authorized by N.J.S.A. 40:55D-40b. If it had done so, the ordinance presumably would have included some standards encouraging and promoting flexibility, economy and environmental soundness in layout and design, "in accordance with which" the planning board may approve the "varying ... of lot areas and dimensions, and yards and setbacks otherwise required by municipal development regulations." Ibid. Because there was no optional, averaging ordinance, the judge's conclusion that under plaintiff's lot averaging plan the *131 Township ended up with the "kind" of development and with the "kinds" of individual lots and standards "contemplated by the [nonexistent] ordinance," was purely speculative.
On the record before us there is much merit to the comments in appellants' reply brief, which we quote:
The developer incorrectly claims that its "lot averaging plan" furthers the intention of the MLUL and thereby fosters the goals of the community. In reality, the developer's proposal does nothing more than leave vacant that property which could not be developed under any circumstances and attempts to cluster homes on undersized lots adjacent to existing residential areas. The developer's proposal further provides ingress and egress to the new homes via local roads which, if their present character is to be maintained, are not designed to accommodate the increased traffic which would be generated by the developer's proposal.
Without the use of lot averaging, the developer would not be able to build 82 homes on the subject property because that property which the developer has dedicated to "environmental purposes" could not be developed under any circumstances. Therefore, under the guise of lot averaging the developer is really attempting to protect against its own hardship in having to conform to the zone requirements of the Township and thereby develop less [sic] homes.
Forcing the Objectors to live beside a suburban development in an otherwise rural area, clearly does not foster the Municipal Land Use Law or the overall zoning plans of the Township. The developer is attempting to use the c(2) ordinance to its own advantage to develop homes on undersized lots while leaving the land, unsuitable to development under any circumstances, vacant. This is clearly not what the legislature intended in enacting the c(2) ordinance.
Accordingly, although there may be instances where deviating from the zoning ordinance in a community will enhance the development of that community, that situation does not exist where, as here, the variance is sought simply to permit the developer to build more lots on a given parcel than would otherwise be permitted under applicable zoning law. The developer is attempting to develop its property in a manner which benefits the developer to the detriment of the neighboring property owners. "[N]o c(2) variance should be granted when merely the purposes of the owner will be advanced." 110 N.J. at 563.
We conclude that under N.J.S.A. 40:55D-70c(2), and the interpretation of that statute advanced in Kaufmann v. Planning Bd. for Warren Tp., 110 N.J. 551 (1988), the Board had no jurisdiction to grant plaintiff's application on this substantially sized tract. The c(2) "flexible" variance power is not a license *132 to undertake piecemeal, project-by-project rezoning of substantial tracts.
Reversed.
NOTES
[1] The Planning Board has not filed a brief. In a statement in lieu of brief it states:

[T]he general public interest does not require the Board's adversarial participation in the appeal. Plaintiff and Appellant-Objectors may reasonably be expected to present all relevant issues to the Court.
Pursuant to R. 2:6-4(c) and (d), the Board hereby submits the foregoing statement in lieu of brief. Public funds should not be expended when the issues in question are clearly raised by the parties directly concerned.