986 A.2d 695 (2010)
411 N.J. Super. 378
CFG HEALTH SYSTEMS, LLC, Plaintiff-Respondent,
v.
COUNTY OF ESSEX and Board of Chosen Freeholders of the County of Essex, Defendants, and
Correctional Health Services, LLC, Defendant/Intervenor-Appellant.
No. A-2577-07T3
Superior Court of New Jersey, Appellate Division.
Argued December 8, 2009.
Decided January 25, 2010.
*696 Lori Grifa, West Orange, argued the cause for appellant Correctional Health Services, LLC (Wolff & Samson, attorneys; Ms. Grifa, of counsel and on the brief; Melissa A. Salimbene, on the brief).
Richard D. Trenk, West Orange, argued the cause for respondent CFG Health Systems, LLC (Trenk, DiPasquale, Webster, Della Fera & Sodono, attorneys; Mr. Trenk, of counsel; Henry M. Karwowski and Mark Y. Moon, on the brief).
Before Judges SKILLMAN, FUENTES and GILROY.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
Intervenor-appellant Correctional Health Services (CHS) appeals from a final judgment of the Law Division, entered on January 25, 2008, which invalidated resolutions of Essex County Board of Freeholders, adopted on October 10, 2007, rejecting all proposals for a contract to provide medical services at the Essex County Correctional Facility (ECCF), and directing the County to "institute a new procurement process" for those medical services. This judgment also directed the County to award the contract for medical services at the ECCF to respondent CFG Health Systems (CFG). We reverse and consequently reinstate the October 10, 2007 resolutions.
In 2005, Essex County awarded a contract to provide medical services at the ECCF to CHS, which remained in effect until the end of 2006.
In September 2006, Essex County issued a request for proposals to provide medical services at the ECCF for the period from January 1, 2007 to December 31, 2009. CHS and CFG were the only two providers that submitted proposals in response to this request. Although CFG's proposal was approximately $4.2 million less than CHS's proposal, the County purchasing department gave a higher score to CHS's proposal than to CFG's proposal, and therefore recommended that the County, acting pursuant to the competitive contracting in lieu of public bidding sections of the Local Public Contracts Law, N.J.S.A. 40A:11-4.1 to -4.5, award the contract to CHS.
Before the Board of Freeholders acted upon this recommendation, CFG brought an action in lieu of prerogative writs in the Law Division against the County and CHS challenging the County purchasing department's evaluation of CHS's and CFG's proposals and recommendation that the contract be awarded to CHS. CFG also claimed that the County's request for proposals *697 was defective because (1) the County had failed to obtain a resolution from the Board to utilize a competitive contracting methodology for the services in accordance with N.J.S.A. 40A:11-4.3(a), which requires such a resolution to be passed "each time" a public contracting agency desires specialized goods or services, and (2) the County had failed to protect against conflicts of interest by requiring compliance with N.J.A.C. 5:34-4.3(e) and (f), which require the filing of non-conflict of interest certifications prior to evaluation of proposals.
The trial court concluded in a written opinion that CHS's proposal was defective and that it would be arbitrary and capricious for the County to reject both proposals and rebid the contract. Based on these conclusions, the court entered final judgment enjoining the County from rebidding the contract and ordered the award of the contract to CFG.
On appeal, we reversed this judgment in an unreported opinion on the ground that the County purchasing department's recommendation to the Board of Freeholders to award the contract to CHS did not constitute final administrative action reviewable by the Law Division and therefore CFG's action had been brought prematurely. CFG Health Systems, LLC v. County of Essex, Nos. 5101-06T5 and A-5154-06T5, 2007 WL 2767987 (Sept. 25, 2007).
On October 5, 2007, the County Administrator, who was also the acting County purchasing agent, issued a report to the Board of Freeholders recommending the rejection of all proposals submitted in response to the 2006 request for proposals for medical services at the ECCF and the conduct of a new procurement process. This recommendation was based on the following reasons:
a. The failure to obtain a resolution of the Board of Chosen Freeholders specifically authorizing the use of the Competitive Contracting Process for the medical services sought to be procured violated the provisions of [N.J.S.A. 40:11-13.2(e)] and therefore rendered the proposal process null and void ab initio.
b. The failure of the members of the Evaluation Committee to timely execute their non-conflict of interest certifications, and the failure of one member to execute a certificate also violated the provisions of [N.J.S.A. 40:11-13.2(e)] and N.J.A.C. 5:34-4.3 and therefore rendered the proposal process null and void ab initio.
c. The County wants to substantially revise the specifications for the medical services so as to delete therefrom the provision of pharmaceuticals and to separately award a contract for the provision of pharmaceuticals to the ECCF pursuant to the provisions of N.J.S.A. 40A:11-4 by resolution of the [Board] to the lowest responsible bidder after public advertising for bids and bidding therefor. This material change in the [RFP] specifications constitutes a basis for the rejection of all proposals pursuant to the provisions of [N.J.S.A. 40A:11-13.2(d)].
On October 10, 2007, the Board of Freeholders accepted the County Administrator's recommendation and adopted resolutions directing the rejection of all proposals and authorizing the use of a new competitive contracting process.
CFG then brought this action in lieu of prerogative writs, claiming that the County's rejection of all proposals was arbitrary and capricious. CFG also asserted in the third count of its complaint that CHS's proposal for the contract had been fatally *698 defective and therefore CHS should be disqualified from submitting any proposals for consideration in the new competitive contracting process.
The trial court granted CHS's motion to dismiss the third count of CFG's complaint, and since that was the only count that sought relief against CHS, the court dismissed the complaint as against CHS, and the action continued solely against the County.
The trial court concluded in an oral opinion that the County's decision to reject both CHS's and CFG's proposals and to obtain new proposals to contract for medical services at the ECCF was arbitrary and capricious. The court rejected the County's reliance upon the lack of a resolution authorizing the contract to be awarded on the basis of competitive contracting and the failure of members of the evaluation committee to file timely non-conflict of interest certifications as a basis for rejection of all proposals and the rebidding contract. The court also concluded that CHS's original proposal had been defective and therefore the contract should have been awarded to CFG. Therefore, the court entered final judgment requiring Essex County to award the contract to CFG.
The County moved for a stay of the judgment pending the outcome of an appeal, which the trial court denied. The County then filed a notice of appeal and emergent motion for a stay pending appeal, which we denied. After the denial of this motion, the County withdrew its appeal.
Around the same time, CHS filed a motion to intervene and for a stay pending appeal. We granted CHS's motion to intervene, following which CHS filed its own notice of appeal from the order requiring the award of the contract to CFG. However, we denied CHS's motion for a stay pending the outcome of the appeal.
CFG filed a motion to dismiss CHS's appeal on the ground that its motion to intervene had been improvidently granted, which we denied. CFG then filed a motion in the Supreme Court for leave to appeal from the order granting CHS's motion to intervene, which the Court denied.
As directed by the final judgment from which this appeal has been taken, the Board of Freeholders adopted a resolution awarding the contract for medical services at the ECCF to CFG. Even though the request for proposals for the contract had been for the term from January 1, 2007 to December 31, 2009, and CFG's proposal only included prices through 2009, the County awarded CFG a three-year contract for those medical services, which does not expire until 2011.
We conclude that the trial court erred in ruling that Essex County Board of Freeholders' decision to reject both CFG's and CHS's proposals to contract for the medical services at the ECCF was arbitrary and capricious. Therefore, we reverse the judgment of the Law Division, which invalidated the resolutions of the Board directing the County to rebid the contract and ordered the County to award the contract to CFG.

I.
CFG argues in the first two points of its answering brief that we erred in granting CHS's motion to intervene on appeal and therefore the appeal should be dismissed without reaching the merits of CHS's argument that the trial court erred in ruling that the Board of Freeholders' decision to reject both proposals for medical services at the ECCF and rebid the contract was arbitrary and capricious. However, our orders granting CHS's motion to intervene and denying CFG's motion to dismiss CHS's appeal constitute the *699 "law of the case" on the issue of the appropriateness of CHS's intervention to pursue this appeal. The "law of the case" doctrine generally "requires a decision of law made in a particular case to be respected by all other lower or equal courts during the pendency of that case." State v. Reldan, 100 N.J. 187, 203, 495 A.2d 76 (1985). Although this doctrine is discretionary and a prior ruling may be revisited in the interests of justice, id. at 205, 495 A.2d 76, CFG has not shown that we should reconsider our decision to allow CHS to intervene in order to pursue this appeal.
Our prior decisions have recognized the appropriateness of granting a party affected by a judgment leave to intervene to pursue an appeal if a party with a similar interest who actively litigated the case in the trial court has elected not to appeal. For example, in Chesterbrooke Ltd. Partnership v. Planning Board of Chester, 237 N.J.Super. 118, 567 A.2d 221 (App.Div.), certif. denied, 118 N.J. 234, 570 A.2d 984 (1989), we concluded that parties who owned property adjacent to a proposed development project should be allowed to intervene for the purpose of appealing a trial court decision overturning a planning board's denial of development approvals after the board elected not to pursue an appeal. In reaching this conclusion, we stated:
Intervention after final judgment is allowed, if necessary, to preserve some right which cannot otherwise be protected.
. . . .
... When the Board decided not to appeal the judgment, objectors' interest could not otherwise be protected without intervention; there was no one available to protect their interest through an appeal.
[Id. at 123, 125, 567 A.2d 221.]
In rejecting the respondent's argument that the motion for intervention for the purpose of pursuing an appeal was untimely, we stated:
On the issue of timeliness, the court must consider the purpose for which intervention is sought. For example, if intervention is sought only for the limited purpose of taking an appeal, the only "prejudice to those already parties in the case" from granting intervention is the inherent "delay" necessarily involved in opposing the intervenor's appeal. When an intervenor seeks intervention "after the final judgment" and only "for the purpose of appealing," the critical inquiry is simply "whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment."
[Id. at 125, 567 A.2d 221 (citations omitted).]
See also Warner Co. v. Sutton, 270 N.J.Super. 658, 662-68, 637 A.2d 960 (App.Div. 1994).
Our grant of CHS's motion for intervention was directly supported by the principles set forth in Chesterbrooke. CHS's position in this litigation was the same as the County's position; that is, the County's decision to rebid the contract was reasonable and should be upheld. Thus, CHS's position was adequately represented before the Law Division by the County. However, once the County elected not to pursue an appeal from the judgment of the Law Division invalidating its resolutions, CHS's position was no longer adequately represented by the County. Therefore, we reaffirm our decision to grant CHS leave to intervene in order to pursue this appeal.

II.
Essex County requested proposals for a contract for medical services in accordance *700 with the competitive contracting in lieu of public bidding sections of the Local Public Contracts Law. N.J.S.A. 40A:11-4.1 to -4.5. N.J.S.A. 40A:11-4.5(d) provides that "[t]he governing body[,]" in this case the Board of Freeholders, "shall have the right to reject all proposals for any of the reasons set forth in [N.J.S.A. 40A:11-13.2]." One of the statutorily prescribed reasons for rejecting all proposals is that "[t]he purposes or provisions [of the Local Public Contracts Law] are being violated[.]" N.J.S.A. 40A:11-13.2(e).
If a public contracting agency exercises its statutory authority to reject all bids, judicial review of that administrative decision is limited to determining whether it was "arbitrary and capricious." Bodies by Lembo, Inc. v. County of Middlesex, 286 N.J.Super. 298, 309, 669 A.2d 254 (App.Div.1996); see also Gannett Outdoor Co. v. City of Atlantic City, 249 N.J.Super. 217, 220-22, 592 A.2d 276 (App.Div.1991). Unless the contracting agency acted in bad faith or abused its discretion in rejecting all bids, the court may not substitute its judgment for that of the agency. PENPAC, Inc. v. Morris County Mun. Utils. Auth., 299 N.J.Super. 288, 298, 690 A.2d 1094 (App.Div.), certif. denied, 150 N.J. 28, 695 A.2d 670 (1997).
We conclude that the County had reasonable grounds for rejecting both proposals for providing medical services at the ECCF and therefore the trial court erred in invalidating the Board of Freeholders' resolution directing the County to rebid the contract.
The County's first ground for rejecting all bids was its failure to comply with N.J.S.A. 40A:11-4.3(a), which states:
In order to initiate competitive contracting, the governing body shall pass a resolution authorizing the use of competitive contracting each time specialized goods or services enumerated in [N.J.S.A. 40A:11-4.1] are desired to be contracted. If the desired goods or services have previously been contracted for using the competitive contracting process then the original resolution of the governing body shall suffice.
The County Administrator advised the Board of Freeholders that it had never adopted a resolution in conformity with this subsection authorizing the use of competitive contracting to contract for "[p]erformance of patient care services [at the ECCF or other county facilities]." N.J.S.A. 40A:11-4.1(h). No party has presented evidence that such a resolution was adopted either when the prior contract for medical services at the ECCF was awarded to CHS or before the request for proposals for the new contract that is the subject of this appeal.
The only pertinent resolution contained in the record is an omnibus resolution that purports to authorize the County to use competitive contracting "for any of the specialized goods and/or services listed in N.J.S.A. 40A:11-4.1." CFG acknowledges that such a resolution does not comply with N.J.S.A. 40A:11-4.3(a).
Nevertheless, CFG argues that "deviation from the statutorily prescribed procedures of the competitive contracting provision does not, as a matter of law, void every contract or process ab initio." However, there is no need for us to decide whether the County's failure to adopt a resolution in conformity with N.J.S.A. 40A:11-4.3(a) required the invalidation of any contract awarded by means of competitive contracting. The only question is whether this failure, together with the other deficiencies in the original competitive contracting process, constituted reasonable grounds for the County's rejection of all proposals for medical services at the ECCF and the rebid of the contract.
*701 The County's second ground for rejecting both CFG's and CHS's proposals for the contract was that one member of the evaluation committee failed to submit a proper non-conflict of interest certification and the other members failed to submit their certifications in a timely manner. The Department of Community Affairs, in the exercise of its regulatory authority under the Local Public Contracts Law, see N.J.S.A. 40A:11-37, has adopted regulations that require execution of such nonconflict of interest certifications by any person who participates in the evaluation of a contract proposal under the competitive contracting provisions of that Law. Those regulations state:
(e) Before reviewing any proposals, each person evaluating a proposal shall assess their own affiliations and financial interest and those of their families that relate to their duties as someone evaluating a proposal to ensure they do not have a conflict of interest. For these purposes, a person has a conflict of interest with a proposal if that person or spouse, parent, or child would be in violation of the Local Government Ethics Law, N.J.S.A. 40A:9-22.1 et seq., or the School Ethics Act, N.J.S.A. 18A:12-21 et seq. as appropriate. Any person with a conflict of interest related to the competitive contracting proposal shall not participate in the evaluation process.
(f) Prior to evaluating the proposals, each individual participating in the evaluation of a proposal shall execute a statement in accordance with (e) above certifying they do not have a conflict of interest. Such statement shall reflect the provisions at (e) above, which relate to possible conflict of interest situations. This statement shall be filed with the authorized agent, prior to the beginning of the evaluation process. The certification shall be as follows:
I hereby certify that I have reviewed the conflict of interest standards in the Local Government Ethics Law or the School Ethics Act, as appropriate, and that I do not have a conflict of interest with respect to the evaluation of this proposal. I further certify that I am not engaged in any negotiations or arrangements for prospective employment or association with any of those submitting proposals or their parent or subsidiary organization.
[N.J.A.C. 5:34-4.3.]
The County failed to comply with these requirements. On December 13, 2006, the evaluation committee reported to the office of purchasing that it was recommending that the contract be awarded to CHS. Thus, the evaluation process had been completed by December 13, 2006, when the final report was submitted to the office of purchasing. However, the committee members did not complete the required conflict of interest statements until December 18, 2006.
Furthermore, while the outside consultant, Stan Repko, completed a non-conflict of interest certification in his individual name, he failed to disclose his employer's conflict of interest. Although he had no direct contractual relationship with the County, his employer, Paige Plus, LLC, had a contract with CHS. As an employee of a company that had an ongoing relationship with one of the bidders, Repko should have disclosed this relationship as a possible conflict of interest.
Although Repko was not an employee of the County, he acted in an official capacity and chaired the committee that evaluated and recommended an award of the multimillion dollar contract to his employer's contract partner, CHS.
Even if the failure of members of the evaluation committee to submit their nonconflict certifications before completion of *702 the report regarding the proposals could be characterized as a "technical" defect that would not require rebidding, this cannot be said of the undisclosed conflict of interest of the outside consultant, Repko, whose employer had a contract with CHS, which had the capacity to place CHS in a position of advantage over CFG and thereby undermine the impartiality of the competitive contracting process. Such a conflict directly undermines the salutory objectives of our public bidding laws to "promot[e] competition on an equal footing and guard[] against `favoritism, improvidence, extravagance and corruption.'" Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 313, 650 A.2d 748 (1994) (quoting Township of Hillside v. Sternin, 25 N.J. 317, 322, 136 A.2d 265 (1957)).
As with the County's failure to adopt a resolution in conformity with N.J.S.A. 40A:11-4.3(a), the question is not whether the failure of the members of the evaluation committee to comply with N.J.A.C. 5:34-4.3(e) and (f) and Repko's apparent actual conflict of interest in participating in the evaluation of the contract proposals required the County to reject both proposals and rebid the contract. Instead, the question is whether those violations of the conflict of interest regulations adopted by the Department of Community Affairs, considered in conjunction with the violation of N.J.S.A. 40A:11-4.3(a), constituted reasonable grounds for the County's discretionary decision to reject both proposals and rebid the contract.
As previously noted, the Local Public Contracts Law specifically provides that a contracting agency may reject a proposal for a contract under the competitive contracting in lieu of public bidding provisions if "[t]he purposes or provisions [of the Local Public Contracts Law] are being violated[.]" N.J.S.A. 40A:11-13.2(e). The County's failure to adopt the kind of resolution required by N.J.S.A. 40A:11-4.3(a), before requesting proposals for a competitively awarded contract, clearly constituted a violation of the Local Public Contracts Law. The failure of the members of the County's evaluation committee to submit the non-conflict of interest certifications required by N.J.A.C. 5:34-4.3(e) and (f), which were adopted to implement the competitive contracting in lieu of public bidding provisions of the Local Public Contracts Law, also conflicted with the purposes of these provisions. We have previously recognized that those sections of the Local Public Contracts Law "provide[] public entities with an alternative method to solicit proposals for public projects" that may not be suitable for awards simply to the "lowest responsible bidder[,]" Weidner v. Tully Envtl., Inc., 372 N.J.Super. 315, 318, 858 A.2d 560 (App. Div.2004), under a "methodology" that does not "unfairly or illegally discriminate against or exclude otherwise capable vendors," N.J.S.A. 40A:11-4.4(b). Therefore, the Essex County Board of Freeholders' decision to reject all proposals for a contract to provide medical services at the ECCF and to rebid this contract was not arbitrary and capricious.[1]

III.
Although this conclusion requires a reversal of the final judgment, we also comment briefly upon several of the other arguments presented by the parties.

*703 A.
CHS argues that the three-year contract Essex County awarded to CFG after the entry of final judgment and the denial of CHS's motion for stay pending appeal is invalid because the term of the contract extends beyond the expiration of the County's original request for bids. We decline to consider this argument for several reasons. First, the County only awarded this contract to CFG because it was ordered to do so by the judgment of the Law Division, which we have reversed. Therefore, we assume the County will now rebid the contract in accordance with its October 10, 2007 resolutions and rescind the existing contract once it makes a new award. Second, the County did not award the contract to CFG until after final judgment was entered. Insofar as the record before us indicates, CHS did not file a motion or a new action in the trial court challenging the terms of the contract awarded to CFG, and CHS did not file an amended notice of appeal or motion with this court directed to this post-judgment administrative action. Therefore, the issue is not properly before us. Third, Essex County is not a party to this appeal. Although the County elected not to pursue an appeal of the judgment awarding the contract to CFG, and we assume it will now rebid the contract in accordance with its October 10, 2007 resolutions, we cannot be sure it will follow this course of action. Therefore, it would not be appropriate to invalidate the current contract for medical services at the ECCF in a legal proceeding in which the County is not an active participant.

B.
CFG argues in its answering brief that "[t]he evidence supports the trial court's determination that CHS's proposal was defective." CHS responds in its reply brief that "the issue of the validity of CHS' proposal was never pleaded, raised nor otherwise litigated before the trial court, and thus, the Court could not possibly make an independent finding that CHS' proposal was defective." In view of our conclusion that the resolutions of the Board providing for the rebidding of the contract are valid, there is no need for us to determine whether CHS's bid was defective. The third count of CFG's complaint alleged that CHS's proposal for the contract was defective and sought as relief an order "disqualifying" CHS from submitting any proposal for consideration by the County. CHS successfully moved to dismiss this count of the complaint on the ground that the Local Public Contracts Law confers exclusive authority upon the contracting agency, in this case Essex County, to disqualify a prospective bidder. See N.J.S.A. 40A:11-4(a). CFG has not cross-appealed from the dismissal of the third count of its complaint. Consequently, even if the issue had been properly pleaded and the evidence supported a finding that CHS's bid was defective, this would not preclude CHS from submitting a proposal in response to the County's rebid of the contract for medical services at the ECCF.
Accordingly, the judgment of the Law Division is reversed.
NOTES
[1] Because we conclude that the County's failure to adopt the resolution required by N.J.S.A. 40A:11-4.3 and the conflict of interest problems involved in the evaluation process provided reasonable grounds for the County's decision to rebid the contract, there is no need to consider the County's third ground for rebidding the contract, which was to afford the County an opportunity to separately bid pharmaceutical services.