**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3228-18

AUGUSTA HOLDINGS, LLC,

 Plaintiff-Respondent,

v.

TOWNSHIP OF LAKEWOOD
and THE TOWNSHIP
COMMITTEE OF THE
TOWNSHIP OF LAKEWOOD,

 Defendants-Respondents.

_____

FAIRWAYS AT LAKE
RIDGE HOMEOWNERS
ASSOCIATION, INC.,

 Appellant.

_____

Argued September 21, 2020 – Decided May 17, 2021

Before Judges Currier, Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket Nos. L-0071-18 and L-0147-18.

Michele R. Donato argued the cause for appellant.

Afiya Ellington argued the cause for respondent Augusta Holdings, LLC (Giordano, Halleran & Ciesla, PC, attorneys; Paul Schneider, Matthew Fiorovanti, and Afiyfa Ellington, on the brief).

Harold N. Hensel argued the cause for respondents Township of Lakewood and Township Committee of the Township of Lakewood (Secare Law Firm, attorneys; Harold N. Hensel, on the brief).

PER CURIAM

Appellant Fairways at Lake Ridge Homeowners Association, Inc. (Fairways) appeals from the March 29, 2019 order of the Law Division denying its motion to: (1) intervene in this action in lieu of prerogative writs filed by plaintiff Augusta Holdings, LLC (Augusta) against defendants Township of Lakewood and its Township Committee (Lakewood); (2) vacate the final judgment entered in favor of Augusta; and (3) reopen and consolidate this action with an action in lieu of prerogative writs filed by Fairways against Lakewood that is pending in the Law Division. Both actions challenge an ordinance regulating the development of Augusta's property. We affirm.

I.

The following facts are derived from the record. Fairways is a homeowners' association whose members include approximately 1124 property

owners in an age-restricted residential development in Lakewood. The Fairways development is adjacent to approximately 100 acres of land owned by Augusta on which is situated a substantial portion of the Eagle Ridge golf course. Augusta's property is located in the R-40 residential zone of Lakewood.

On December 7, 2017, Lakewood adopted Ordinance No. 2017-51, which amended and supplemented the township's Uniform Development Ordinance (UDO) in response to the township having adopted a new master plan. Prior to the enactment of Ordinance No. 2017-51, the UDO permitted residential development in the R-40 residential zone with a maximum density of 4.5 units per gross acre on tracts of at least 100 contiguous acres. This type of residential development was a permitted conditional use provided the units were age-restricted.

Section 30 of Ordinance No. 2017-51 (Section 30) allows non-age restricted development with a different density as a Planned Unit Development in the R-40 residential zone. According to Section 30, this change is not effective until certain road and transportation improvements in Lakewood are completed by local, county, or state authorities. Section 30 does not establish a timeframe for completion of the transportation improvements. The township had previously submitted a petition to the State Planning Commission (SPC) for

3

endorsement of the township's new master plan. SPC granted a conditional endorsement, provided certain issues, including traffic concerns, were addressed.

On January 12, 2018, Fairways and other plaintiffs filed an action in lieu of prerogative writs in the Law Division against Lakewood, Augusta, GDMS Holdings, LLC (GDMS), of which Augusta is an affiliate, and other defendants challenging the entirety of Ordinance No. 2017-51, the newly adopted master plan, and two other ordinances (the Fairways Action). In that action, Fairways alleges that Ordinance No. 2017-51 violates the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, is inconsistent with the SPC's conditional endorsement of the master plan, and is the result of inside dealing between a Lakewood Township Committeeman and the principals of Augusta and GDMS. In addition to challenging the UDO, Fairways seeks to impose a constructive trust or easement for its benefit on the golf course property.[1]

Ten days later, Augusta filed this action in lieu of prerogative writs in the Law Division against Lakewood challenging Section 30 (the Augusta Action).

---

[1]  Fairways filed a separate consumer fraud action alleging causes of action arising from the marketing of the Fairways development and alleged representations made to purchasers of homes in the development relative to the use of the golf course as an amenity or as dedicated open space.

Augusta, which seeks to develop the golf course property with non-age restricted housing, alleged Section 30 creates an illegal building moratorium under N.J.S.A. 40:55D-90(b), a provision of the MLUL, because it is an interim zoning ordinance with an indefinite duration and/or a timed growth control ordinance.

Because Augusta had not yet been served with the complaint in the Fairways Action, it certified in its complaint pursuant to Rule 4:5-1 that there were no related cases pending. Its case information statement also did not disclose the Fairways Action. Lakewood's answer in the Augusta Action, however, identified the Fairways Action as a pending related case. Augusta did not amend its Rule 4:5-1 certification after the township filed its answer. There is no evidence that any party or the court notified Fairways of the Augusta Action or sought to join Fairways as a party in that action.

Augusta subsequently moved for summary judgment. Lakewood opposed the motion. The parties agreed there were no disputed material facts and resolution of the motion by summary judgment was appropriate.

On April 16, 2018, the trial court granted Augusta's motion. Relying on our holding in Toll Brothers, Inc. v. Township of W. Windsor, 312 N.J. Super. 540 (App. Div. 1998), the court held that Section 30 constituted an illegal

moratorium on development because it effectively blocked development of Augusta's property indefinitely.

On April 25, 2018, the trial court entered a final judgment in favor of Augusta severing Section 30 from the UDO. The township did not appeal.

More than ten months later, on February 26, 2019, Fairways moved for leave to intervene in the Augusta Action, vacate the April 25, 2018 judgment, and reopen and consolidate the Augusta Action with the Fairways Action, which was pending before the same judge who decided the Augusta Action. Fairways argued that it should be permitted to intervene in the Augusta Action under the mandatory joinder Rule 4:33-1 and the entire controversy doctrine. In addition, Fairways argued that intervention after entry of final judgment was warranted because it was unaware of the Augusta Action, the entry of summary judgment, or Lakewood's decision not to appeal until the Augusta Action was discussed at a January 2019 public hearing on a developer's application for approval to develop the golf course property with non-age restricted housing.

In addition, Fairways argued that the April 25, 2018 judgment should be vacated pursuant to Rule 4:50-1 (a), (c) and (d). In support of its position, Fairways argued the judgment was void because Augusta's failure to amend its Rule 4:5-1 certification amounted to fraud, misrepresentation, or misconduct of

A-3228-18

an adverse party and because it was entered without participation of a necessary party. Augusta and GDMS opposed the motion.

On March 15, 2019, the trial court issued an oral opinion denying the motion. An April 8, 2019 written opinion supplements the court's reasoning. The court concluded that Fairways's intervention in the Augusta Action was not mandatory because its interest in the validity of Section 30 was no different from that of any other property owner in Lakewood and was represented by Lakewood's counsel. The court also concluded Fairways's ability to prove its claims in the Fairways Action was not harmed by the judgment, which concerned only the discrete issue of the validity of Section 30. Fairways's broader challenges to the UDO, master plan, and other ordinances concern claims not raised in the Augusta Action or addressed by the court in that matter.

The court noted the acknowledgment by Augusta, GDMS, and the intended developer of the golf course property that if Fairways is successful in striking down the entire UDO in the Fairways Action, any land use approvals issued for the golf course property under the UDO would be invalid. The court found the potential developer was pursuing approvals for the golf course property at its own risk and that Fairways would have the right to appeal any

approvals issued with respect to the property and could seek to join any such challenges with the Fairways Action.

The court also rejected Fairways's argument that it had established grounds to vacate the judgment pursuant to Rule 4:50-1. The court rejected Fairways's fraud claims, finding that while Augusta had an obligation to amend its Rule 4:5-1 certification when it became aware of the Fairways Action, any harm from its failure to do so was eliminated by the identification of the Fairways Action in Lakewood's Rule 4:5-1 certification.

Finally, the court acknowledged that when it decided Augusta's summary judgment motion it had not seen Lakewood's certification. However, it found that even if it had been aware of the Fairways Action, it would not have ordered or permitted Fairways to join the Augusta Action because "given the narrow issue that was before" the court and the township's representation of the interests of all of its property owners, doing so would not have been "fair, equitable, or required by the entire-controversy doctrine . . . ."

This appeal followed. Fairways makes the following arguments.

> POINT I
>
> THE LAW DIVISION ERRED BY VIOLATING THE ENTIRE CONTROVERSY DOCTRINE AND THE COURT RULES.

A-3228-18

POINT II

THE LAW DIVISION ERRED IN REFUSING TO ALLOW THE FAIRWAYS ASSOCIATION TO INTERVENE.

POINT III

THE MOTION JUDGE ERRED IN REFUSING TO ALLOW PERMISSIVE INTERVENTION.

POINT IV

THE LAW DIVISION ERRED IN REFUSING TO VACATE SUMMARY JUDGMENT.

II.

We begin with Fairways's argument that it was entitled to intervene in the Augusta Action as of right. According to Rule 4:33-1,

> [u]pon timely application anyone shall be permitted to intervene in an action if the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"Intervention after final judgment is allowed, if necessary, to preserve some right which cannot otherwise be protected." Chesterbrooke Ltd. P'ship v. Planning Bd., 237 N.J. Super. 118, 123 (App. Div. 1989). In addition, "[w]hen an intervenor seeks intervention 'after the final judgment' . . . the critical inquiry

is simply 'whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment.'"  Id. at 125 (quoting United Airlines, Inc. v. McDonald, 432 U.S. 385, 387, 395-96 (1977)).  Where the elements of Rule 4:33-1 have been met, intervention is mandatory.  Id. at 124.

Having carefully reviewed the record in light of these legal principles, we conclude the trial court correctly found that Fairways did not have a right to intervene in the Augusta Action.  While the property owners who are members of Fairways have an interest in the validity of Section 30, we agree with the trial court's finding that their interest, like that of all Lakewood property owners, was adequately represented by the township in the Augusta Action.

In addition, Fairways's challenges to the validity of the entire UDO, master plan, and other ordinances were not impaired by the judgment entered in the Augusta Action.  The judgment addresses only the validity of Section 30. The court made no determination with respect to the validity of the remaining provisions of the UDO, the master plan, or the other ordinances at issue in the Fairways Action.  This includes Fairways's claim, in light of the holding in the Augusta Action, that Section 30 was an integral component of the UDO and cannot be severed from it without invalidating the entire ordinance.

10

Fairways is not, therefore, in the same position as the intervenors in Chesterbrooke or CFG Health Sys., LLC v. Cty. of Essex, 411 N.J. Super. 378, 385-86 (App. Div. 2010). In those cases, private parties sought to intervene in actions in which government entities that were representing their interests elected not to appeal adverse trial court decisions. We held that intervention was required in those cases because the intervenors otherwise would have no recourse to advance their interests on appeal. Here, however, Fairways's interests, which extends beyond the limited issue decided in the Augusta Action, are being advanced in the Fairways Action, where its broader challenges to the UDO, master plan, and other ordinances are pending. Any argument Fairways has with respect to Section 30 may be raised in its pending action.

Nor do we agree with Fairways's argument that the trial court abused its discretion by denying its request for permissive intervention. According to Rule 4:33-2,

> [u]pon timely application anyone may be permitted to intervene in an action if the claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

An additional consideration is "whether intervention will eliminate the need for subsequent litigation." N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J.

Super. 272, 286 (App. Div. 2018) (quoting <u>Zirger v. Gen. Accident Ins. Co.</u>, 144 N.J. 327, 341 (1996)). The rule "vests considerable discretion in the trial court." <u>Ibid.</u> (quoting <u>Zoning Bd. of Adjustment v. Evesham Twp. Council</u>, 86 N.J. 295, 299 (1981)). We review a trial court's decision to deny permissive intervention for an abuse of discretion. <u>N.J. Div. of Youth & Family Servs. v. D.P.</u>, 422 N.J. Super. 583, 590-91 (App. Div. 2011).

Fairways's intervention in the Augusta Action would reopen a long closed matter, negate the finality obtained by Augusta with respect to the validity of Section 30, and delay resolution of Augusta's claims. In addition, Fairways's intervention would not eliminate the need for additional or subsequent litigation, given that the Fairways Action was pending before the Augusta Action was filed and presumably would continue after intervention.

We are not persuaded by Fairways's argument that reversal of the trial court's decision is mandated by the entire controversy doctrine. The doctrine is designed to promote fairness to the parties, judicial efficiency, and complete and final dispositions by avoiding piecemeal litigation. <u>DiTrolio v. Antiles</u>, 142 N.J. 253, 267 (1995). "The twin pillars of the entire controversy doctrine are fairness to the parties and fairness to the system of judicial administration." <u>Gelber v.</u>

12

The Zito Partnership, 147 N.J. 562, 565 (1997) (citing Joel v. Morrocco, 147 N.J. 546, 555 (1997)).

Rule 4:30A provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required" by the doctrine. Whether or not the doctrine requires judicial action is an equitable determination, subject to the trial court's discretion. Oliver v. Ambrose, 152 N.J. 383, 395 (1998); 700 Highway 33, LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011). While the doctrine reflects the Supreme Court's "long-held preference that related claims and matters arising among related parties be adjudicated together[,]" Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 443 (2011), "equitable considerations can relax mandatory-joinder requirements when joinder would be unfair." Prevratil v. Mohr, 145 N.J. 180, 190 (1996).

As discussed above, the Augusta Action concerned a challenge to a discrete provision of the UDO. The resolution of Augusta's claims did not impede Fairways's ability to advance its multifaceted challenge to the entire UDO, master plan, and other ordinances. Because Fairways was not apprised of the Augusta Action and, as a result, was unable to assert any arguments it may have had in the Augusta Action, it would not be precluded under the entire

controversy doctrine from raising those arguments in the Fairways Action. It was, therefore, within the trial court's discretion to conclude that it would be inequitable and unnecessary to permit intervention and reopen the Augusta Action, which the parties reasonably believed to be final.

With respect to Fairways's motion to vacate the judgment pursuant to <u>Rule</u> 4:50-1, the rule provides in relevant part:

> [o]n motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake . . . ; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; [or] (d) the judgment or order is void . . . .

An application to set aside an order pursuant to <u>Rule</u> 4:50-1 is addressed to the motion judge's sound discretion, which should be guided by equitable principles. <u>Hous. Auth. v. Little</u>, 135 N.J. 274, 283 (1994). A trial court's determination under <u>Rule</u> 4:50-1 is entitled to substantial deference and will not be reversed in the absence of a clear abuse of discretion. <u>US Bank Nat'l Ass'n v. Guillaume</u>, 209 N.J. 449, 467 (2012). To warrant reversal of the court's order, Fairways must show that the decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." <u>Ibid.</u> (quoting <u>Iliadis v. Wal-Mart Stores, Inc.</u>, 191 N.J. 88, 123 (2007)

14

(internal quotations omitted)).  In determining whether to vacate a judgment, courts must balance "the strong interests in the finality of litigation and judicial economy with the equitable notion that justice should be done in every case." Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 193 (App. Div. 1985).

Fairways argues the judgment should be vacated under subsection (c) of the rule because it was obtained by fraud, misrepresentation, or misconduct of an adverse party.  It bases its argument on the claim that Augusta intentionally failed to amend its Rule 4:5-1 certification to prevent Fairways from seeking intervention.  Rule 4:5-1(b)(2) provides in relevant part as follows:

> Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court . . . and, if so, the certification shall identify such actions and all parties thereto.  Further, each party shall disclose in the certification the names of any non-party who should be joined in the action pursuant to [Rule] 4:28 . . . .  Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification.  The court may require notice of the action to be given to any non-party whose name is disclosed in accordance with this rule or may compel joinder pursuant to [Rule] 4:29-1(b).  If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose

existence was not disclosed or the imposition on the non-complying party of litigation expenses that could have been avoided by compliance with this rule.

The purpose of the rule is to implement the philosophy behind the entire controversy doctrine. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 109 (2019) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:5-1 (2021)). In addition to ordering the joinder of parties or claims, "a trial court, once informed of related actions, can employ various procedural tools to prevent excessively complicated or unfair litigation." Gelber, 147 N.J. at 566. Those tools include: (1) taking measures to clarify the case before it and in the related proceeding; (2) defining the limits of discovery to avoid duplication of overlapping witnesses or evidence; (3) consideration of the applicability of collateral estoppel in respect to factual determinations bearing on the claims and defenses of the respective parties; (4) staying one or the other proceeding to ensure consistent results in both proceedings; and (5) fostering mediation among the parties. Ibid. There is, however, no mandatory provisions in the Rule requiring action by the court or notice to any party in the related matter.

At the time it filed its complaint, Augusta had not been served with the complaint in the Fairways Action. Its initial Rule 4:5-1 certification, therefore,

16

was not fraudulent, a misrepresentation, or misconduct. In addition, the existence of the Fairways Action was disclosed in Lakewood's answer. At that point, the intent of the Rule was met. The court had notice of the related action. Moreover, the trial court found that if it had noticed Lakewood's certification it would not have required the parties to notify Fairways of the Augusta Action or require its intervention, given the narrow scope of Augusta's challenge to Section 30 and Lakewood's representation of Fairways's interests.

Augusta, therefore, gained no advantage by its failure to amend its Rule 4:5-1 certification when it became aware of the Fairways Action. "Every fraud in its most general and fundamental conception consists of the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith." Jewish Ctr. v. Whale, 86 N.J. 619, 624 (1981). The record does not support Fairways's allegations of fraud, misrepresentation or misconduct in Augusta's failure to amend its certification.

Nor do we agree with Fairways's argument that the judgment was void because Fairways was not joined as party in the Augusta Action. We have held that where a necessary party is not served with a complaint and given the opportunity to represent its interests, a final order affecting the party's rights is void under Rule 4:50-1(d). Rose v. Arujo, 260 N.J. Super. 458, 462 (App. Div.

1992).  However, as explained above, Fairways was not a necessary party to the Augusta Action, its interests were adequately represented by Lakewood, and its ability to pursue its broader claims in the Fairways Action was not impeded by entry of the judgment.  We reach a similar determination with respect to Fairways's claims that the judgment was entered as the result of a mistake.

To the extent we have not specifically addressed any of Fairways's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3228-18