**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5460-15T3

MARIAN RAGUSA,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, PUBLIC
EMPLOYEES' RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

<div style="margin-left:2em">

Argued January 22, 2018 — Decided September 7, 2018

Before Judges Ostrer and Whipple.

On appeal from the Board of Trustees of the
Public Employees' Retirement System,
Department of Treasury, Docket No. 1182077.

Marian Ragusa, appellant, argued the cause pro
se.

Jeff S. Ignatowitz, Deputy Attorney General,
argued the cause for respondent (Gurbir S.
Grewal, Attorney General, attorney; Melissa H.
Raksa, Assistant Attorney General, of counsel;
Jeff S. Ignatowitz, on the brief).

</div>

PER CURIAM

    Marian Ragusa appeals from a final agency decision of the

Board of Trustees (the Board) of the Public Employees' Retirement

System (PERS) denying her pension service credit retroactive to April 1, 2010, for her service as municipal prosecutor for the Township of Middle. The Board relied on N.J.S.A. 43:15A-7.2(a), enacted in 2007, see L. 2007, c. 92, § 20, which prospectively denies pension service credit to a person who performs professional services for a political subdivision pursuant to a professional services contract awarded in accordance with N.J.S.A. 40A:11-5, a provision of the Local Public Contracts Law (LPCL). Having considered the parties' arguments in light of the record and applicable principles of law, we reverse as to years 2010 through 2012, and affirm for 2013 and subsequent years. In short, until 2013, Ragusa did not perform her duties as a municipal prosecutor pursuant to a professional services contract awarded under the LPCL.

I.

The principal issue before us is whether the Board correctly applied N.J.S.A. 43:15A-7.2(a) to the facts. The statute was adopted to address perceived abuses of the pension system by independent contractors and professional service contractors, who often "tacked" service for multiple municipalities to accumulate substantial pensions. See A. Boxer, State of New Jersey Office of the State Comptroller, Improper Participation by Professional

<u>Service Providers in the State Pension System</u> (2012) (Comptroller Report).

Subsection (a) states, in relevant part: "A person who performs professional services for a political subdivision of this State . . . under a professional services contract awarded in accordance with section 5 of P.L.1971, c.198 (C.40A:11-5) . . . on the basis of performance of the contract, shall not be eligible for membership in the Public Employees' Retirement System." N.J.S.A. 43:15A-7.2(a).[1]

The section incorporates the definition of "professional services" found in N.J.S.A. 40A:11-2. <u>Ibid.</u> It is undisputed that Ragusa performed "professional services" as the municipal prosecutor. <u>See</u> N.J.S.A. 40A:11-2(6).

The question is whether she did so "under a professional services contract awarded in accordance with section 5 of P.L.1971, c.198 (C.40A:11-5)" and whether she seeks pension credit "on the basis of performance of the contract." <u>See</u> N.J.S.A. 43:15A-7.2(a).

N.J.S.A. 40A:11-5 authorizes local governments to award contracts for professional services without bidding, provided it

---

[1] The Board concedes that it did not rely on subsection (b) of the provision, which bars pension credit "on the basis of performance of . . . professional services, if the person meets the definition of independent contractor as set forth in regulation or policy of the federal Internal Revenue Service for the purposes of the Internal Revenue Code." N.J.S.A. 43:15A-7.2(b).

(1) awards the contract by a resolution justifying the government's decision; (2) publicizes the essential terms of the contract in a newspaper; and (3) maintains on file for public inspection the resolution awarding the contract and the contract itself.  The LPCL also defines a "contract" to mean "any agreement, including but not limited to a purchase order or a formal agreement, which is a legally binding relationship enforceable by law, between a vendor who agrees to provide or perform goods or services and a contracting unit which agrees to compensate a vendor, as defined by and subject to the terms and conditions of the agreement." N.J.S.A. 40A:11-2(21).

The controversy focuses on Ragusa's service in 2010 through 2012.  Ragusa began work as the Township's municipal prosecutor on March 20, 2010.  But, until 2013, the Township did not insist that Ragusa execute a written professional services contract. Although she signed the 2013 contract under protest, we discern no genuine dispute that subsection (a) applied to her in 2013 and thereafter.   N.J.S.A.  2B:25-4(b)  states  that  a  municipal prosecutor shall serve a one-year term (except in certain classes of municipalities that do not include the Township).  The Township was free to approach 2013 differently from previous years.  R. 2:11-3(e)(1)(E).

With our review of the statute as background, we consider the essentially undisputed facts. In November of 2009 and 2010, the Township adopted resolutions soliciting proposals for various professional positions, including municipal prosecutor. Those request-for-proposal (RFP) resolutions declared that the Township had opted to submit "all professional services contracts to the Fair and Open Process" under "N.J.S.A. 19:44A-20.4, et seq."[2] They set a December 1 deadline, and required that proposals cover eight categories of information: qualifications and experience; scope of services; contact information; fee proposal; office staffing plan and resources; location of office from which services shall be provided; references; and potential conflict. The resolutions stated that the Township Committee "may award a contract by approving a resolution . . . ."

In January 2010 and 2011, the Township adopted resolutions awarding contracts to listed individuals for listed positions, at specified fees. These contract-award resolutions referred to the "Fair and Open Process for the award of contract pursuant to

---

[2] N.J.S.A. 19:44A-20.7, a provision of the New Jersey Campaign Contributions and Reporting Act, not the LPCL, mandates a municipality use a "fair and open process" to award a contract, if the value exceeds $17,500, to a business entity that made a reportable campaign contribution.

N.J.S.A. 19:44A-20.4," and authorized the mayor to "execute contracts with each of the above-mentioned individuals as necessary, to be followed with a resolution of award and certification as attached hereto."

The January 2010 contract-award resolution selected Ragusa's predecessor, Mary Bittner, as municipal prosecutor. In late 2009, Bittner had asked Ragusa if she would be interested in succeeding her as municipal prosecutor. Ragusa had been an assistant county prosecutor in Cape May since 2003. "Burnt out" trying sexual assault cases, Ragusa said she would be interested in the municipal post, provided she could remain in PERS.

Ragusa applied to succeed Bittner on December 20, 2009, proposing a March 15, 2010 start date. She stated she intended the position to be her "primary employment." Her "Application for Position of Prosecutor for Township of Middle," conformed to the eight categories delineated in the RFP. The submission also referred to her "proposal for the position." Nonetheless, she said she was unaware of the RFP, and instead had simply followed Bittner's suggestion. After an interview, the mayor recommended her appointment. The Township's human resources manager, Vera Kalish, assured Ragusa she could remain in PERS if she had no break in service. Kalish relied on a conversation with an unnamed

staff-person with the Division of Pensions and Benefits in making the assurance.

On March 15, 2010, the Township adopted a resolution specific to Ragusa, appointing her to the position. Unlike the contract-award resolutions adopted in January 2010 and January 2011, this resolution made no reference to contracts or the Fair and Open Process. The Township Committee simply "resolved . . . that the following individual is hereby appointed to the position opposite their name at the following salary," and then listed Ragusa; the title, Municipal Prosecutor; her salary of $26,500; and an effective date of March 20, 2010.

Ragusa was then placed on the Township payroll. She received regular bi-weekly paychecks. The Township deducted tax and pension contributions. At year's end, it issued her a W-2 form. Ragusa considered herself a full-time municipal prosecutor. She worked out of the Township's offices. She had no separate office or private clients. Her practice was limited to prosecuting cases in Middle Township Municipal Court.[3] The Division sent paperwork confirming Ragusa's continuing participation and payroll deductions.

---

[3] When Woodbine Borough consolidated its municipal court with the Township's in 2012, Ragusa prosecuted cases arising out of both municipalities. In 2012, she took on some part-time work from Cape May City.

On November 26, 2010, Ragusa applied to retain her position. Her submission essentially mirrored the one she sent a year earlier, except she listed the Township's address for the office where she would perform her services, as opposed to addresses elsewhere. She testified that she was unaware of the RFP resolution that the Township Committee adopted eleven days earlier.

Also unbeknownst to Ragusa, on January 5, 2011, the Township Committee adopted the contract-award resolution governing multiple positions, this time naming Ragusa. A week later, the township clerk sent Ragusa a draft "contract for services" "as approved at a Township Committee Meeting." The draft identified Ragusa as a contractor, and stated she was awarded the contract "in connection with the Local Public Contract Law under the Fair and Open Process." It set a term of January 1 through December 31, 2011; set her compensation as "not to exceed $26,500." The Township reserved the right to cancel the contract for breach. It required Ragusa to work with the mayor and Township Committee. It also required Ragusa to comply with anti-discrimination law, and to indemnify the Township under certain circumstances.

Ragusa objected to the contract. Considering herself a municipal employee, and not a contractor, she confronted the township administrator. Ragusa testified she told him, "This is

not me." He said, "Okay." He accepted the unsigned contract from Ragusa, and did not pursue it further. Ragusa remained on the payroll at her prior salary.

In November 2011, Ragusa submitted another application for the position, essentially like those in 2009 and 2010. The record does not include a resolution authorizing and establishing an RFP for municipal prosecutor for 2012. In January 2012, the Township adopted a resolution that states, "Subject: Award Contract and Ratify Agreement Through Non-Fair and Open Process — Marian Ragusa — Municipal Prosecutor." Acknowledging that Ragusa's term as municipal prosecutor had expired in 2011, it declared that the "township . . . wishes to carry-over said term, until a successor is appointed." The resolution stated, "The Agreement between Marian Ragusa and the Township of Middle for Municipal Prosecutor, be and is hereby ratified and the contract is hereby awarded through the Non-Fair and Open Process as described in Pay-To-Play Statutes."

Ragusa testified she was unaware of the resolution. Notably, there was no written agreement between Ragusa and the Township. Furthermore, the resolution set Ragusa's salary at "not to exceed $17,500," although she continued to be paid at a higher rate. The Township again submitted a draft professional services contract to Ragusa for her execution, referring back to the January 2012

resolution, including the lower pay-rate. Ragusa refused to sign it, the Township did not press the matter, and she completed the year as municipal prosecutor at her prior salary.

As noted above, in 2013, the Township insisted that Ragusa execute a professional services contract. The Township Committee adopted an RFP resolution in November 2012 including the municipal prosecutor's position, as it did in 2009 and 2010. The record does not include Ragusa's application for 2013. In January 2013, the Township Committee adopted a contract award resolution mirroring the resolutions it adopted in 2010 and 2011, naming Ragusa for the municipal prosecutor's position.

In May 2013, the Township informed Ragusa that she was not considered an employee. It refused to pay Ragusa unless she signed the form of contract she refused to sign in 2011 and 2012. With minor revisions, she did so, under protest. The Township never signed the revised contract. She subsequently was required to submit vouchers for payment and was removed from the payroll.

The Township's action was apparently prompted by a January 18, 2013 letter from the Division to local governmental certifying officers, and others, instructing them to review the employment status of individuals performing professional services, to ascertain compliance with N.J.S.A. 43:15A-7.2. In 2012, the State Comptroller had reported widespread non-compliance with N.J.S.A.

43:15A-7.2. See Comptroller Report. The 2013 letter noted that certifying officers were required to confirm eligibility annually, pursuant to N.J.S.A. 43:3C-15. To assist making those determinations, the Division enclosed an Employee/Independent Contractor Checklist, and required their completion by February 15, 2013.[4]

The Township concluded in May 2013 that Ragusa was an independent contractor. In December 2013, following an investigation using information the Township provided, the Division informed Ragusa she was ineligible to receive pension credit. The Division's notification letter did not state whether it relied upon N.J.S.A. 43:15A-7.2(a) or (b).

Ragusa appealed to the Board by letter on February 3, 2014. In her appeal, Ragusa included her own application of the twenty IRS factors and claimed she was an employee. On March 12, the Division requested additional information from the Township. Six months later, Division staff again concluded that Ragusa was ineligible, noting that the contracts for services drawn up in 2011 through 2014 indicated that "the position of Municipal Prosecutor is that of an independent contractor."

---

[4] The checklist was attached to a Division fact sheet. See N.J. Div. of Pensions and Benefits, Fact Sheet #84, Professional Services Contracts, Independent Contractors, and Pension Enrollment (2013) (Fact Sheet #84).

The Board adopted the Division's determination. The Board found the Township "solicited [petitioner's] professional services through 'requests for proposals and qualifications'" and petitioner "submitted proposals to the Township for her services, which were accepted." Referring to the language of the service contracts that petitioner initially refused to sign, the Board found the "[c]ontracts for her services ha[d] been awarded 'in connection' with [the LPCL] and identify the contracting parties as 'Township' and 'Contractor.'" The Board also noted "strong indicators of her status as an independent contractor, which also disqualify her" under N.J.S.A. 43:15A-7.2(b). Referring to the IRS factors that must be evaluated under this subsection, the Board noted that the Township identified "no behavioral or financial control" over petitioner.

After Ragusa filed an administrative appeal, an ALJ conducted a hearing at which Ragusa, Kalish, a former mayor, and the Division investigator testified. The ALJ determined petitioner was ineligible for pension benefits under N.J.S.A. 43:15A-7.2(a), because she was "performing professional services as a part-time municipal prosecutor . . . pursuant to a professional services contract, and the contract was authorized in accordance with the [LPCL]." The ALJ found the Township's hiring procedures for the municipal prosecutor position comported with N.J.S.A. 40A:11-5,

12

in that the Township "solicited proposals" and "accepted informal 'bids'" for the position. The ALJ also considered that the resolutions and contracts contained the term "professional services contract," which indicated petitioner was "hired as an independent contractor." The ALJ did not directly evaluate the IRS factors for independent contractor status. See N.J.S.A. 43:15A-7.2(b); Fact Sheet #84. However, he noted several aspects of her independence on the job, and concluded that Ragusa was not a "pensionable employee."

The Board adopted the ALJ's decision on June 23, 2016 without further explanation.

### III.

Petitioner raises the following points on appeal:

> I. UNDER THE FACTS OF THIS CASE, MARIAN RAGUSA IS AN EMPLOYEE OF MIDDLE TOWNSHIP AND SHOULD HAVE HER MEMBERSHIP IN PERS REINSTATED, RETROACTIVE TO MARCH 20, 2010.
>
>> A. Marian Ragusa did not provide professional services to Middle Township pursuant to a professional services contract.
>
>> B. Marian Ragusa does not meet the definition of an independent contractor as set forth in regulation or policy of the federal Internal Revenue Service for the purposes of the Internal Revenue Code.
>
> II. THE DIVISION OF PENSIONS SHOULD BE ESTOPPED FROM DENYING MARIAN RAGUSA CREDIT FOR

13

THE YEARS IN WHICH PENSION CONTRIBUTIONS WERE
MADE WHILE SHE HAS BEEN EMPLOYED BY MIDDLE
TOWNSHIP AS THE MUNICIPAL PROSECUTOR.

IV.

As the facts surrounding Ragusa's hiring are essentially undisputed, the issue is a legal one: whether Ragusa performed her professional services "under a professional services contract awarded in accordance with . . . N.J.S.A. 4A:11-5," of the LPCL. N.J.S.A. 43:15A-7.2(a).[5]

We may defer to an agency's interpretation of a statute it enforces, Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007), especially when the interpretation involves an ambiguous provision or the exercise of expertise. Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 6). However, principal responsibility for enforcement of the LPCL lies with the Department of Community Affairs (DCA). See CFG Health Sys., LLC v. Cnty. of Essex, 411 N.J. Super. 378, 388 (App. Div. 2010) (recognizing DCA's regulatory authority under the LPCL, citing

---

[5] As noted, the Board relies solely on subsection (a) in denying Ragusa pension credit. It submits that "whether [Ragusa] was an independent contractor or a bona fide employee under [subsection (b)] is irrelevant to the disposition of this case." In sum, the Board waives reliance on subsection (b). Therefore, we need not address it. Subsection (a) may provide an independent basis for denying pension credit.

N.J.S.A. 40A:11-37); see also N.J.S.A. 40A:11-37.1 (referring to the role under the LPCL of the Division of Local Government Services in DCA). Therefore, less deference is due the Board.

Furthermore, "when an agency's decision is based on the 'agency's interpretation of a statute or its determination of a strictly legal issue,' we are not bound by the agency's interpretation." Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). We may reverse an agency's decision if it "violate[s] express or implied legislative policies . . . ." In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 541 (2016) (alteration in original) (quoting University Cottage Club of Princeton New Jersey Corp. v. N.J. Dept. of Env'l Prot., 191 N.J. 38, 48 (2007)). We also review de novo issues of contract formation. See NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 430 (App. Div. 2011).

We turn first to the plain language of the statute. If it is clear, our task is done. In re Kollman, 210 N.J. 557, 568 (2012). If not, we may consider extrinsic materials. Ibid. We do not interpret the statute liberally or strictly. "[W]hile a person 'eligible for benefits' is entitled to a liberal interpretation of the pension statute, 'eligibility [itself] is

not to be liberally permitted.'" Francois v. Bd. of Trs., 415 N.J. Super. 335, 350 (App. Div. 2010) (quoting Krayniak v. Bd. of Trs., 412 N.J. Super. 232, 242 (App. Div. 2010)).

The statute requires that there be a professional services contract, and that it be awarded in accordance with section five of the LPCL, N.J.S.A. 40A:11-5. Neither requirement is satisfied by the facts of this case.

As noted above, a contract is a legally enforceable agreement between a "vendor who agrees to provide or perform goods or services and a contracting unit that agrees to compensate a vendor." N.J.S.A. 40A:11-2(21). Applying the definition of "professional services," a "contract for professional services" is a contract for "services performed by a person authorized by law to practice a recognized profession," such as a lawyer. N.J.S.A. 40A:11-2(6). However, a "professional services contract" does not encompass every employer-employee relationship between a local government and a professional — notwithstanding that the professional agrees to provide his or her services in return for compensation. A "contract" under the LPCL is between a "vendor" and the local government. N.J.S.A. 40A:11-2(21). "Vendor" is not defined. However, throughout the definitional provision, it refers to persons engaged in the provision of goods or services in response to public procurement. See N.J.S.A. 40A:11-2.

16                                                          A-5460-15T3

Although Ragusa agreed to provide legal services to the Township in return for compensation, she did not do so as a vendor. Notably, no written agreement was executed before 2013. Ragusa was not initially hired pursuant to the RFP process. She submitted her initial application for employment in December 2009. She was unaware of the RFP Resolution and submitted her application after the deadline for proposals had passed. She was not selected in the Award Resolution adopted in January 2010. Rather, she was appointed to the position of municipal prosecutor pursuant to a freestanding March 15, 2010 resolution that made no reference to public contracting.

Nor was Ragusa a "vendor" in 2011. She submitted her application after — but not in response to — the November 2010 RFP Resolution. Although she was awarded a contract under the January 2011 Award Resolution, and the mayor was authorized to negotiate a contract with her, she refused to execute a proposed written contract as a vendor. We recognize that "contracts do not need to be in writing to be enforceable." Leodori v. Cigna Corp., 175 N.J. 293, 304-05 (2003). However, there was no oral agreement as to the terms set forth in the writing. Rather, believing she was a full-time employee, she protested to the township administrator, who declined to pursue the matter.

Later that year, Ragusa applied to be municipal prosecutor for 2012. However, there apparently was no RFP Resolution soliciting proposals. In early 2012, the Township adopted a resolution to "carry over" Ragusa's term. The resolution purported to ratify the agreement between Ragusa and the Township. But, as noted, a professional services contract between Ragusa and the Township had never been executed. The only extant agreement between Ragusa and the Township pertained to her initial agreement to accept the position of municipal prosecutor in 2010 as a full-time employee. Also, the 2012 resolution purported to award her a contract to provide services in return for no more than $17,500, although the Township continued to pay Ragusa her prior salary. Thus, the 2012 resolution did not accurately convey either side's position.

Secondly, regardless of how one characterizes the contract between Ragusa and the Township, it was not "awarded in accordance with section 5 of P.L. 1971, c. 198 [the LPCL] ([N.J.S.A.] 40A:11-5) . . . ." N.J.S.A. 43:15A-7.2(a). As noted, the Township did not award a contract in 2010. Also, the 2010 resolution that initially appointed Ragusa did not "state supporting reasons for its action in the resolution," as required by N.J.S.A. 40A:11-5(a)(i). The resolution simply appointed Ragusa to the municipal prosecutor's position at the specified salary. Nor could the

18

Township have placed the "contract . . . on file and available for public inspection" in the Township clerk's office as required. See N.J.S.A. 40A:11-5(a)(i). No contract was executed until 2013.

We recognize that N.J.S.A. 43:15A-7.2 was enacted to curb abuses of the pension system by independent contractors and professional services providers. See Comptroller's Report. The Board argues that a professional service provider and municipality should not be permitted to frustrate the Legislature's intent by simply failing to execute an awarded contract. We agree. However, Ragusa did not reach an agreement with the Township to provide services as a vendor, and then simply refuse to execute an awarded contract. As noted, no contract was awarded in 2010. The Township simply appointed Ragusa to the position at a set salary, and placed her on the payroll. In 2011, there was no meeting of the minds that Ragusa would serve as an independent contractor, as set forth in the proposed contract. She rejected it, and the Township relented. Ragusa's situation bears no resemblance to the professionals who "tacked" service with multiple municipalities, to accumulate substantial pension credits that the Comptroller viewed as abusive. See Comptroller Report at 9. Ragusa accepted what she perceived to be a full-time employment with the Township, which entitled her to pension credits. As noted, the Board has

waived any argument that Ragusa was an independent contractor under N.J.S.A. 43:15A-7.2(b).

In sum, we reverse the Board's order, to the extent it denied Ragusa pension credit for the period March 20, 2010 through December 31, 2012, and affirm as to the period beginning January 1, 2013.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5460-15T3